JUDGE PRESKA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

08 CV 00211

|  |  |
|---|---|
| PATRICIA LEO HOLLOMAN<br>27-40 Ericcson St.<br>E. Elmhurst, New York 11369<br><br>and<br><br>LORNA SAMUELS<br>512 Bradford St.<br>Brooklyn, New York 11207<br><br>and<br><br>JUDY SHERIDAN-GONZALEZ<br>3977 Sedgwick Ave., Apt. 18C<br>Bronx, New York 10463<br><br>       Plaintiffs,<br><br>      v.<br><br>NEW YORK STATE NURSES ASSOCIATION<br>c/o Registered Agent Richard Silber<br>11 Cornell Rd.<br>Latham, New York 12110-1499<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**COMPLAINT WITH<br>JURY TRIAL DEMAND** |

## CIVIL ACTION - COMPLAINT WITH JURY DEMAND

### Introduction

1.      Defendant New York State Nurses Association (NYSNA) unlawfully retaliated

against its union members, plaintiffs Holloman, Samuels and Sheridan-Gonzalez, by disciplining

them for exercising their right to speak out and oppose NYSNA's efforts to disaffiliate from its

national union, United American Nurses.  NYSNA is a union which is also a professional

1

association for nurses, and is governed by a Board of Directors which includes non-union members and former supervisors.  In unlawfully disciplining its members, NYSNA violated the provisions of the Labor Management Reporting and Disclosure Act, (LMRDA), 29 U.S.C. §411(a)(2) which prohibits retaliation against union members based on their exercise of their right to free speech, and 29 U.S.C. §411(a)(5) which prohibits the imposition of discipline without due process.  NYSNA also engaged in an unlawful scheme to suppress dissent by plaintiffs, who are current or former members of its Board of Directors. In addition, NYSNA violated its own bylaws and rules in disciplining plaintiffs and by acting unlawfully to disaffiliate from its national union.  NYSNA's bylaws and rules prohibit the Board of Directors from voting on matters such as disaffiliation, which affect collective bargaining.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to Sections 102 and 609 of the LMRDA, (29 U.S.C. §§412 and 529), and 28 U.S.C. §1331.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims arising under New York state law concerning plaintiffs' claims for breach of contract involving NYSNA's bylaws and violation of New York statutes governing not for profit corporations.

3.      Venue is appropriate in this district pursuant to 29 U.S.C. §412 and 28 U.S.C. §1391 as the violations alleged herein took place in this district and the defendant maintains a place of business in the Southern District of New York at 120 Wall Street, 23rd Floor, New York 10005 and represents members employed in this district.

## PARTIES

4.      Plaintiffs Patricia Leo Holloman ("Holloman"), Lorna Samuels ("Samuels"), and

Judy Sheridan-Gonzalez ("Sheridan-Gonzales"), have been at all times relevant to this action, members of the New York State Nurses Association (NYSNA), a New York not-for-profit corporation and a "labor organization" within the meaning of Sections 3(i) and (j)(5) of the LMRDA, 29 U.S.C. §402(i) and (j)(5).

5.     Plaintiffs Holloman and Sheridan-Gonzalez were elected members of NYSNA's Board of Directors until October 2007. Plaintiff Samuels is and has been a member of NYSNA's elected Board of Directors since 2004. She is currently the Secretary of the NYSNA Board of Directors.

6.     Defendant New York State Nurses Association (NYSNA) is a statewide professional association for registered nurses. It is also New York's largest union representing registered nurses, with more than 34,000 members. The association is affiliated on the national level with the American Nurses Association (ANA) and was a founding affiliate of the United American Nurses AFL-CIO (UAN), a national union representing nurses. NYSNA has an office in Latham, New York and maintains a place of business in New York City, where many of its members are employed.

## FACTS

### Background

7.     Plaintiffs are nursing employees of hospitals who are represented for purposes of collective bargaining by their union, defendant NYSNA. They are also members of the UAN and the ANA. Their memberships in these organizations, and their status as collective bargaining unit members, are relevant to the claims asserted here.

8.     Plaintiff Holloman is a registered nurse employed at Mt. Sinai Medical Center in

3

New York City in Nursing Quality Improvement and the Magnet Recognition Program. She has

been a leader in the nursing profession for most of her career. She has been a member of

NYSNA for 31 years, and has held elected office in NYSNA at various times over the years.

Most recently, Ms. Holloman was elected to the position of At-Large Director on NYSNA's

Board of Directors from 2005 to 2007 and was also its Second Vice President. Ms. Holloman

was a party to the formation of the United American Nurses (UAN) and its affiliation with the

AFL-CIO, and has been a UAN member since 1999. She is an elected delegate to UAN's

National Labor Assembly and secretary of her local bargaining unit at Mt. Sinai Medical Center.

Ms. Holloman has also been a member of the American Nurses Association (ANA) for 31 years,

and a member of the ANA Board of Directors for eight years, from 1998 to 2006. She is

currently a member of the American Nurses Credentialing Committee (ANCC) Board and a

delegate to the ANA's House of Delegates. Ms. Holloman received her bachelor of science in

nursing degree from St. John University, New York. Over the years, she has served as a

president of NYSNA's Delegate Assembly, and on other NYSNA councils, task forces and

committees, most recently as co-chair of its strategic planning committee.

     9.     Plaintiff Samuels is a registered nurse employed at Morrisania Diagnostic &

Treatment Center, New York, New York as Head Nurse in its Ambulatory Care Offsite Center.

She has been a leader in the nursing profession for most of her career. She has been a member of

NYSNA for more than 23 years, and has held elected office in NYSNA at various times over the

years. Most recently, Ms. Samuels was elected to the position of Secretary of NYSNA's Board

of Directors from 2004 to the present. Ms. Samuels has been a member of the United American

Nurses (UAN) since 1999. She has been an elected delegate to UAN's National Labor Assembly

since 2001, and is also the head nurse delegate of her local bargaining unit at Morrisania

Diagnostic & Treatment Center. Ms. Samuels has also been a member of the American Nurses

Association (ANA) for 23 years, and a delegate to the ANA's House of Delegates since 1999.

Ms. Samuels received her bachelor of science in nursing degree with honors from Edgar Evers

College, Brooklyn, New York, and a master of science in nursing degree from Columbia

University School of Nursing. Over the years, she has served on many NYSNA committees,

councils and task forces.

10.      Plaintiff Sheridan-Gonzalez resides in this judicial district and is a registered

nurse employed at Montefiore Medical Center, New York, as a staff nurse in the emergency

department. She has been a leader in the nursing profession for most of her career. She has been

a member of NYSNA for 27 years, and has held elected office in NYSNA at various times over

the years. Most recently, Ms. Sheridan-Gonzalez was a member of NYSNA's Board of Directors

from 2005 to 2007, and was also elected to its Delegate Assembly in several capacities (including

president and vice president) from 1989 until she was "term limited" in 2007. Ms. Sheridan-

Gonzalez has been a member of the United American Nurses (UAN) since 1999. She has been

an elected delegate to UAN's National Labor Assembly and is also the president of her local

bargaining unit at Montefiore Medical Center. Ms. Sheridan-Gonzalez has also been a member

of the American Nurses Association (ANA) for 25 years, and a delegate to the ANA's House of

Delegates since 1996. Ms. Sheridan-Gonzalez received her bachelor of science degree from

SUNY Empire State, and a master of science in nursing degree from the College of Mt. St

Vincent. Over the years, she has served on many NYSNA committees, councils and task forces.

11.      The right to serve on committees, councils, and task forces for NYSNA, ANA and

the UAN are important union membership rights and benefits flowing from plaintiffs'
membership in NYSNA.

12.    NYSNA is an organization that serves multiple purposes. It is both a professional
association for all registered nurses (including supervisors and managers), and a union which
represents nurses in collective bargaining. The Board of Directors is elected by all members of
NYSNA, including supervisors and managers, and Board members themselves can include
supervisors or managers. The fact that NYSNA, a union, can be governed by persons who are
not union members or who are the managers and supervisors of its union members, gives rise to
the issues raised in this complaint.

13.    Because of its multiple purposes, NYSNA has enacted bylaws, rules and policies
to insulate its collective bargaining functions from its associational functions as required by
federal labor law developed by the National Labor Relations Board. The insulation doctrine is
pivotal to the union governance issues raised in this complaint and operates to insure that union
collective bargaining related matters are addressed only by collective bargaining representatives.

14.    Consistent with its insulation policies, NYSNA's collective bargaining-related
functions fall within its Economic and General Welfare Program. Collective bargaining policy
matters are deemed to be under the purview of NYSNA's Delegate Assembly, which is
comprised of delegates elected from collective bargaining units within designated geographic
zones within the state of New York. . The Delegate Assembly was established in 1988 in to
assist the collective bargaining program in remaining insulated from the Board of Directors. In
addition, NYSNA's Board of Directors enacted specific policies, including Policy 2-6, described
below, to enforce the insulation doctrine.

6

15.     NYSNA is a state affiliate of the American Nurses Association (ANA), a national multi-purpose professional association for registered nurses. ANA similarly has dual purposes, with collective bargaining functions and associational functions.

16.     In 1999, members of NYSNA and several other state nurses associations joined together and formed the United American Nurses, AFL-CIO (UAN) to act as their national independent and unified voice for union nurses.

17.     In 1999, before NYSNA determined to affiliate with the UAN, the Delegate Assembly, (elected collective bargaining representatives from across the state), engaged in a full debate, voted to undertake the affiliation and thereupon recommended it to the NYSNA Board of Directors. Subsequently, the NYSNA Board of Directors implemented the will of the Delegate Assembly and effectuated the affiliation with the UAN.

18.     The UAN is an autonomous national labor organization which is an affiliate of the AFL-CIO. The UAN and the ANA entered into an affiliation agreement, whereby UAN exclusively assumed ANA's collective bargaining functions as its only Associate Organizational Member of ANA for collective bargaining.

19.     UAN provides financial, technical, educational, and logistical support for NYSNA's collective bargaining and union organizing efforts, including strikes, organizing campaigns, negotiations and access to the AFL-CIO.

**Bylaws and Policies Concerning Insulation**

20.     NYSNA enacted Policy 2-6, titled "Policy: Legal and Fiduciary Obligations," which encompasses "statements of legal and fiduciary responsibility and the guidelines for insulation of the association's collective bargaining program." Section II of the Policy describes

7

NYSNA's compliance with the federal labor law doctrine known as "insulation," and provides in pertinent part that:

> As a multi-purpose professional organization, NYSNA is in part a labor organization. That part of the affairs of the association that involves the collective bargaining activities requires strict adherence to principles set out by applicable labor laws and court decisions. Among the most important of these principles is that the rank and file employees whom the association represents must have full and complete freedom to determine their own goals in collective bargaining. Accordingly, **the board of directors cannot participate in or influence the conduct of the collective bargaining program – including (but not limited to) such matters as elections, grievances, arbitrations, or contract negotiations.** [Emphasis added].

21. Section II.(c) of NYSNA Policy 2-6 requires that:

> The board must scrupulously avoid any discussion of collective bargaining matters, including any that may be erroneously brought to its attention by members or others outside the association.

22. There are no collective bargaining membership limitations on the persons who can vote for or be elected members of the NYSNA Board of Directors, which can potentially include managers, supervisors, and former supervisors. In fact, six of the thirteen members of the current Board of Directors were not union members represented by NYSNA upon their election to the Board. Two members of the NYSNA Board, including the president and president-elect, were managers in their previous employment.

23. Because statutory supervisors and managers can vote for, and be elected to serve on, the NYSNA Board of Directors, the Board is not an "insulated body" for purposes of federal labor law.

### NYSNA Considers Disaffiliation From UAN; Plaintiffs Dissent

24. Around mid-2007, some members of the NYSNA leadership became unhappy

8

with NYSNA's relationship with the UAN.  At a Board meeting on August 8, 2007, a majority

(consisting of only six) of the ten Board members present and voting decided to poll the NYSNA

membership concerning the question of staying in the UAN or disaffiliating from the UAN.  (The

full complement of the Board is thirteen members).  Plaintiff Samuels was not present for this

vote, but would have voted no, had she been present.   This vote took place in an executive

session of the Board.

25.    On August 10, NYSNA announced the decision to poll the members on

disaffiliation, including selected details of the Board's executive session discussion.  These

details were also discussed at a membership meeting on August 15, 2007.

26.    Four members of the Board (including two of the three plaintiffs, Holloman and

Sheridan-Gonzales), and two other Board members, Joan Cumberbatch and Veronica

Richardson, opposed the decision to take the poll and voted "no" on the question on August 8th.

The three plaintiffs and Ms. Richardson later issued a written "Minority Report" as permitted by

the NYSNA Policies and Procedures, detailing the reasons for their opposition.

27.    NYSNA Policy 2-6, Section I provides in pertinent part:

> With limited exceptions (e.g., when a potential or actual conflict has been
> identified), a director has a duty to vote on matters before the board.  A director
> should express fully any opposition he/she has to an action of the board before
> a vote is taken.  **Once a vote is taken, a director incurs an obligation to**
> **interpret and defend the majority decision, UNLESS**: ... (b) **you choose to**
> **file a minority report.**  This recourse should occur very infrequently, if at all,
> since your obligation is to avoid creating confusion and divisiveness among the
> members.  Members have a right to expect cohesive, coordinated leadership.
> [Emphasis added].

28.    Pursuant to Section I of Board Policy 2-6, quoted above, plaintiffs and Ms.

Richardson submitted their Minority Report on September 26, 2007.  Defendant subsequently

9

improperly designated this Minority Report as "confidential."

29.    Among other reasons detailed in their Minority Report, plaintiffs opposed the Board's decision to undertake the poll because they believed that it violated the insulation policies in Policy 2-6. Disaffiliation from the UAN involved matters directly impacting the collective bargaining program, since UAN provided national support for NYSNA's collective bargaining related obligations.

30.    At a Board meeting on September 30, 2007, the Board retroactively decided that the plaintiffs' Minority Report would be deemed to be an amendment to the minutes of the executive session held on August 8th, and therefore the Minority Report could not be made public. This was inconsistent with the Board's own conduct, as details of the Board's executive session deliberations were shared by NYSNA's CEO, Tina Gerardi at the August 15th membership meeting.

31.    The Board majority had no legal or procedural basis to retroactively classify the plaintiffs' Minority Report as confidential. By the Board's action, plaintiffs were denied a lawful avenue within the organization within which to disseminate their opposing viewpoint.

32.    The poll concerning disaffiliation was conducted from August 28, 2007, to September 11, 2007.

33.    Plaintiffs and about twenty other nurses formed a group called "NYSNA Nurses for Unity" and actively campaigned against disaffiliation from the UAN. The Nurses for Unity conducted a vigorous campaign, sponsored a website, and issued flyers making the case against disaffiliation.

34.    Several NYSNA Board members, including Barbara Crane and Winifred

Kennedy, and NYSNA staff, including its CEO, Tina Gerardi, and Lorraine Seidel, program

director of the Economic and General Welfare Program, campaigned strongly in favor of

disaffiliation from the UAN.

35.    Upon information and belief, NYSNA used its institutional resources to distribute

literature, link to its website, and campaign in favor of disaffiliation.

36.    The NYSNA leadership complained about the Nurses for Unity's campaign,

spuriously asserting that their campaign literature "highlighted" the NYSNA acronym and logo

in a misleading way (while at the same time, NYSNA officers were using its institutional

resources to campaign in favor of disaffiliation).  In addition, NYSNA expended institutional

resources to campaign against and discredit the position of the Nurses for Unity.

37.    The poll votes were counted on September 18, 2007 and the vote was 2,312 to

1,533 against disaffiliation, with 60% of the members polled voting against disaffiliation.

38.    Notwithstanding the 60% majority vote against disaffiliation, the NYSNA

leadership continued to plan to disaffiliate from the UAN and took steps to silence the dissent of

plaintiffs.

### Discipline of Plaintiffs and Scheme to Suppress Dissent

39.    In September and October 2007, internal union complaints were filed by various

persons against the 23 Nurses for Unity.  The complaints stated that the Nurses for Unity engaged

in "conduct detrimental" to NYSNA because, in essence, they opposed disaffiliation from UAN

and "misused" the name and logo of NYSNA in calling their caucus the "NYSNA Nurses for

Unity."

40.    Upon information and belief, NYSNA officials encouraged or solicited at least

11

some of the complaints against the plaintiffs, which contained identical language. And on
October 5, 2007, Tina Gerardi, Chief Executive Officer of NYSNA, sent a letter to all NYSNA
members suggesting that the Nurses for Unity had tricked members into voting against
disaffiliation and implicitly solicited further complaints to be filed against them on the ground
that they had acted to the detriment of NYSNA.

41.     The complaints were scheduled to be investigated by a NYSNA committee and a
determination as to whether formal union charges would be filed was supposed to have been
made at the NYSNA Board meeting on November 15, 2007.

42.     In October, 2007, the UAN passed a resolution authorizing its payment for the
attorney fees for the NYSNA Nurses for Unity in asserting their federally protected free speech
rights.   Consequently, counsel was retained to represent the Nurses for Unity and wrote several
letters to NYSNA advising them that the complaints were illegally premised on protected speech.

43.     On November 15, 2007, the NYSNA Board dismissed the complaints against the
Nurses for Unity, conceding that the Nurses for Unity would not be disciplined because the
wrongful actions alleged ("conduct detrimental" based on the alleged misuse of the NYSNA
name and logo) were "protected under the freedom of speech provisions of applicable federal
labor law."   Dismissal letters were issued on November 30.   However, the dismissal letters went
on to state NYSNA's "outrage" over the behavior of the Nurses for Unity.   Plaintiffs and many
other Nurses for Unity construed the letters as reprimands, despite the dismissal of the
complaints.

44.     On the same date as the dismissal letters were issued, NYSNA sent a mailing to
each member of the union, explaining that the complaints had been dismissed but that the Board

had conveyed its "outrage" to each of the Nurses for Unity.

45.     On November 30, 2007, NYSNA notified plaintiffs Sheridan-Gonzalez and Holloman, both former elected NYSNA Board members, and plaintiff Samuels, a current Board member, that action was being taken against them by the NYSNA Board in their status as Board members (despite the dismissal of the other speech-related complaints against them).  The basis for the NYSNA action was that the three plaintiffs engaged in "public dissension by publicly opposing the Board" in connection with their "participation in the Nurses for Unity campaign against disaffiliation from UAN."   The authority for the Board's action was NYSNA Policy 2-6, "Policy: Legal and Fiduciary Obligations," which NYSNA claimed required Board members to support majority decisions, "refrain from public dissension" and "avoid creating confusion and divisiveness among the members."

46.     The punishment imposed on plaintiffs was that each of them would "no longer be considered for appointment to any NYSNA board, committee, council, task force or award" or "nomination for any ANA or ANA-entity related position."

47.     Plaintiff Samuels was additionally disqualified "as a sitting board member … from all executive session meetings."  Ms. Samuels was a member of the finance committee, and is the elected Secretary of the Board, but she was removed from the finance committee and is now being denied the opportunity afforded all Board members to be appointed to any executive committee and councils.

48.     In disciplining plaintiffs on November 30, 207, the NYSNA Board did not afford the plaintiffs any due process.  First, the offense for which they were disciplined, engaging in "public dissension" in violation of Policy 2-6, was not the same as the wrongful conduct alleged

13

in the original complaints, misuse of the NYSNA logo. Consequently, they were not given prior notice of the charges against them for which discipline was being imposed. Second, they were not offered the right to a full and fair hearing, and they were not permitted to defend themselves against the charges or cross examine witnesses prior to the imposition of discipline, all of which are required by NYSNA's internal policies, including the "NYSNA Guidelines, Policies and Procedures for Disciplinary Action" at "Policies," §§6 through 12. Nor were plaintiffs afforded "strict confidentiality" as required by those policies.

49.    The predicate for the discipline against plaintiffs was expressly based on their protected speech. Plaintiffs outspokenly opposed disaffiliation, and had complained about NYSNA's lack of transparency, the short time frame for the vote, and failure to provide objective information to members about all sides of the disaffiliation debate.

50.    In disciplining plaintiffs, the NYSNA Board of Directors was retaliating against plaintiffs because they had been successful in persuading 60% of the members polled to vote against disaffiliation.

51.    The punishment imposed on plaintiffs is a wholesale disqualification from full participation in the affairs of the union and seriously affects their current membership rights and potentially impacts on their future ability to successfully seek leadership positions within the Union.

52.    On November 30, 2007, NYSNA's President wrote to Ann Converso, President of UAN, complaining among other things, that UAN's resolution authorizing payment of legal fees for the Nurses for Unity in the assertion of their free speech claims "may implicate federal law" relating to spending of union funds. NYSNA disseminated this letter to all its members on its

14

website.  The publication of the letter was an effort to intimidate others from assisting the Nurses

for Unity (including plaintiffs) in asserting their protected free speech rights.

### NYSNA Disaffiliates From UAN, Violates Insulation Rules

53.    On December 17, 2007, the NYSNA Board of Directors voted to disaffiliate from

the UAN.  On December 21, 2007, it notified the UAN that it had disaffiliated.

54.    Plaintiff Samuels was deliberately excluded from the December 17, 2007 meeting

and was denied the opportunity to vote on this important issue.

55.    The Board acted to disaffiliate despite the fact that a majority of collective

bargaining members polled voted against disaffiliation.

56.    The Board's action in disaffiliating implicated NYSNA's collective bargaining

program because the UAN provided national technical, financial, educational and logistical

support for NYSNA's collective bargaining activities, and offered its members the benefits of

affiliation with the AFL-CIO.

57.    The NYSNA Board of Directors is not an insulated body, a fact which is

recognized in NYSNA's own policies and rules, including Policy 2-6.  Non-union members on

the Board voted on the disaffiliation of union members from their national union, (while

Samuels, a union member, was deliberately excluded from the vote.)

58.    Consequently, the Board's action violated Policy 2-6 requiring the Board's

insulation from actions affecting collective bargaining.

59.    The Board's action violated its own past practice.  In 1999, the Board acted to

affiliate with the UAN only after the Delegate Assembly was convened, debated the issue and

subsequently took a vote (not a poll or informal survey) to recommend affiliation.

60.    Prior to acting to disaffiliate, the disaffiliation question was not formally presented by the Board to the Delegate Assembly, which has not convened, deliberated, debated, or held a vote following parliamentary procedures on the question. The Vice President of the Delegate Assembly, Patricia Kane, protested the Board's refusal to convene the Delegate Assembly to vote on this matter, without success.

61.    After NYSNA announced on its website that it planned to disaffiliate, it initiated an informal, nonbinding survey of some of the Delegates on the issue.

### Exhaustion of Internal Remedies

62.    Plaintiffs have no further recourse to internal union remedies since the Board entirely bypassed its established procedures in disciplining plaintiffs.

63.    Plaintiffs were not notified of any appeal rights in the November 30, 2007 letters and there is no provision in the bylaws or policies for an appeal by Board members against actions taken by other Board members.

64.    Any exhaustion of remedies would be futile, given the demonstrable hostility of the Board majority to the plaintiffs.

### COUNT I

### VIOLATIONS OF LMRDA - TITLE I - Section 101(a)(2)

65.    Plaintiffs incorporate by reference the allegations contained in ¶ ¶ (1) through (64) of this Complaint.

66.    Defendant's November 30, 2007 letters to plaintiffs disqualifying them from consideration "for appointment to any NYSNA board, committee, council, task force or award" or "nomination for any ANA or ANA-entity related position," constitutes discipline within the

16

meaning of the LMRDA, affecting plaintiffs' membership rights within the union to fully

participate in the affairs of the union. The right to be considered for "appointment to any

NYSNA board, committee, council, task force or award" or "nomination for any ANA or ANA-

entity related position" are rights which are open to any member of the union.

67.     Defendant's November 30, 2007 letter to plaintiff Samuels removing her from

participation in any Board executive sessions and from the Finance Committee constitutes

"discipline" within the meaning of the LMRDA.

68.     Plaintiffs engaged in protected speech within the meaning of the LMRDA Section

101(a)(2), 29 U.S.C. Section 411(a)(2) by (i) opposing the Board's decision to poll the

membership on the question of disaffiliation from the UAN, opposing the processes the Board

followed, and issuing a Minority Report, and (ii) campaigning against disaffiliation from their

national union as part of the NYSNA Nurses for Unity.

69.     The November 30, 2007 disciplinary letters are explicitly premised on plaintiffs'

protected speech, i.e., their "public dissension in publicly opposing the Board" in connection

with their "participation in the Nurses for Unity campaign against disaffiliation from UAN."

70.     Defendant's actions against plaintiffs were in retaliation for their protected speech

and were intended to suppress and chill the free speech rights of plaintiffs, the other Nurses for

Unity, and any of the 2,300 members who voted against disaffiliation, as guaranteed by 29

U.S.C. §411. Defendant's actions were motivated by its desire to promote the political interests

of the majority of the NYSNA Board of Directors in disaffiliating from the UAN without

opposition from the membership.

71.     The foregoing conduct violates 29 U.S.C. §411(a)(2) which provides, in relevant

part, as follows:

> Every member of any labor organization shall have the right to meet and assemble freely
> with other members; and to express any views, arguments, or opinions; and to express at
> meetings of the labor organization his views, upon candidates in an election of the labor
> organization or upon any business properly before the meeting, subject to the
> organization's established and reasonable rules pertaining to the conduct of meetings.

72.    As a direct, intentional, and proximate result of defendant's actions, plaintiffs have

been injured in the exercise of their rights under the LMRDA, and their free speech and assembly

rights have been chilled.  Plaintiffs have been subjected to disciplinary retaliation, and their

membership rights to participate fully in the affairs of the union have been adversely affected.

As a further result of defendant's unlawful behavior, plaintiffs have suffered emotional distress,

humiliation and damage to their reputations in the union, at their places of employment, and in

their professional associations, including the ANA.

**73.**    Defendant's conduct was willful, intentional and in reckless disregard of

plaintiffs' rights.

## COUNT II

### VIOLATIONS OF LMRDA - TITLE I - Section 101(a)(2) –
### SCHEME TO SUPPRESS DISSENT

74.    Plaintiffs incorporate by reference the allegations contained in ¶¶ (1) through

(73) of this Complaint.

75.    Defendant disciplined plaintiffs as described in Count I.   Defendant has

attempted to cloak its unlawful discipline in terms of a Board of Directors' action aimed at other

Board members acting in their capacity as Board members.  But defendant also engaged in a

series of additional oppressive actions against plaintiffs and the Nurses for Unity which was

18

designed to suppress dissent, rendering the discipline against plaintiffs unlawful. These
oppressive actions included, but are not limited to, the following:

i.  Soliciting internal union disciplinary complaints against the Nurses for Unity;

ii.  Requiring the Nurses for Unity to hire counsel to protect them from arbitrary
discipline based on their protected speech and campaign activities;

iii.  Dismissing the complaints against the Nurses for Unity after conceding they were
based on protected speech, but simultaneously reprimanding them and expressing "outrage" for
their conduct with respect to the campaign against disaffiliation;

iv.  Sending letters on November 30, 2007 to each member of NYSNA explaining that
disciplinary complaints against the Nurses for Unity had been dismissed due to the free speech
defense but stating that the Board had expressed its outrage over the Nurses for Unity's campaign
activities;

v.  Asserting to the UAN on November 30, 2007 that its payment of the attorneys' fees
for the Nurses for Unity may have violated federal law, and publishing this letter on the NYSNA
membership website in order to intimidate members from asserting or helping others to assert
their free speech rights;

vi.  Retroactively designating the plaintiffs' non-confidential Minority Report to the
Board's August 8, 2007 vote as a document appended to minutes taken in executive session and
thereby effectively sealing the Minority Report from dissemination, even though Board Policy 2-
6 permits the filing of a Minority Report.

76.  Defendant's actions in unlawfully disciplining plaintiffs and as outlined in
subparagraphs (i) through (vi) above were undertaken with hostile animus against plaintiffs and

19

the Nurses for Unity in general, as part of a purposeful and deliberate scheme to suppress dissent and chill opposition within the union by members opposed to the disaffiliation from the UAN, especially members like plaintiffs who were in leadership positions on the Board of Directors.

77.    Defendant's actions as described above were intended to suppress and chill the free speech rights of plaintiffs as guaranteed by 29 U.S.C. §411, and to promote the political interests of the majority of the Board of Directors in disaffiliating from the UAN without opposition from the membership.

78.    The foregoing conduct violates 29 U.S.C. §411(a)(2).

79.    As a direct, intentional, and proximate result of defendant's actions, plaintiffs have been injured in the exercise of their rights under the LMRDA, and their free speech and assembly rights have been chilled.  Plaintiffs have been subjected to disciplinary retaliation, and their membership rights to participate fully in the affairs of the union have been adversely affected.  As a further result of defendant's unlawful behavior, plaintiffs have suffered emotional distress, humiliation and damage to their reputations in the union, at their places of employment, and in their professional associations, including the ANA.

80.    Defendant's conduct was willful, intentional and in reckless disregard of plaintiffs' rights.

## COUNT III

## VIOLATIONS OF LMRDA - TITLE I - SECTION 101(a)(5)

81.    Plaintiff incorporates by reference the allegations contained in ¶¶ (1) through (80) of this Complaint.

82.  This claim arises under Section 101(a)(5) of the LMRDA, 29 U.S.C. Section

411(a)(5).

83.    The November 30, 2007 letters issued to plaintiffs, disqualifying them from being considered "for appointment to any NYSNA board, committee, council, task force or award" or "nomination for any ANA or ANA-entity related position," are discipline within the meaning of §101(a)(5) because they adversely affected plaintiffs' membership rights.

84.    Plaintiff Samuels is additionally being deprived of the opportunity to participate in executive sessions of the Board and has been removed from the Finance Committee, which adversely affects her membership rights.

85.    The punishment imposed on plaintiffs is a wholesale disqualification from full participation in the affairs of the union which adversely affects their current membership rights and potentially impacts on their future ability to successfully seek leadership positions within the Union.

86.    The disciplinary penalties were imposed without charges, prior notice, and on the basis of different facts than were presented in the initial complaints.  Plaintiffs were deprived of a full and fair hearing, and were denied the opportunity to cross examine witnesses and prepare a defense.  In sum, plaintiffs were deprived of any due process as required by defendant's own "NYSNA Guidelines, Policies and Procedures for Disciplinary Action" at "Policies," §§6 through 12.

87.    The foregoing conduct violates Section 101(a)(5) of the LMRDA which provides in pertinent part that "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a

21

reasonable time to prepare his defense; (C) afforded a full and fair hearing."

88.     As a result of defendant's violations of their rights under Section 101(a)(5), plaintiffs' membership rights to fully participate in the affairs of the union have been adversely affected since November 30, 2007, without notice, hearing or any due process.

89.     The disqualification from full participation is causing plaintiffs irreparable harm, for which they have no adequate remedy at law.  As a further result of defendant's unlawful behavior, plaintiffs have suffered emotional distress, humiliation and damage to their reputations in the union, at their places of employment, and in their professional associations, including the ANA.

90.     Defendant's conduct was willful, intentional and in reckless disregard of plaintiffs' rights.

## COUNT IV

### STATE LAW VIOLATION OF NYSNA BYLAWS AND POLICIES
### (Disaffiliation in Violation of the Insulation Doctrine)

91.     Plaintiffs incorporate by reference each of the preceding paragraphs from (1) through (90).

92.     This claim is pursuant to 28 U.S.C. § 1367 within the supplemental jurisdiction of this Court and arises under the laws of the state of New York.

93.     NYSNA Policy 2-6 was adopted by the NYSNA Board of Directors on January 26-27, 1989 and revised January 14-15, 2004, acting within the scope of its authority, and is binding on the Board of Directors and on NYSNA as a corporate entity.

94.     NYSNA Policy 2-6 is a contract between NYSNA and its Board of Directors

within the meaning of New York law.

95.    Plaintiffs as members of NYSNA are third party beneficiaries of the contract.

96.    NYSNA Policy 2-6, titled "Policy: Legal and Fiduciary Obligations,"
encompasses "statements of legal and fiduciary responsibility and the guidelines for insulation of
the association's collective bargaining program." Section II of the Policy provides in pertinent
part that:

> As a multi-purpose professional organization, NYSNA is in part a labor
> organization. That part of the affairs of the association that involves the
> collective bargaining activities requires strict adherence to principles set out by
> applicable labor laws and court decisions. Among the most important of these
> principles is that the rank and file employees whom the association represents
> must have full and complete freedom to determine their own goals in collective
> bargaining. Accordingly, **the board of directors cannot participate in or**
> **influence the conduct of the collective bargaining program – including**
> **(but not limited to) such matters as elections, grievances, arbitrations, or**
> **contract negotiations.** [Emphasis added].

97.    Section II.(c) of NYSNA Policy 2-6 requires that:

> The board must scrupulously avoid any discussion of collective bargaining
> matters, including any that may be erroneously brought to its attention by
> members or others outside the association.

98.    NYSNA's relationship with the UAN is integrally intertwined with the conduct of
NYSNA's collective bargaining program. The UAN provides technical, financial and logistical
support of NYSNA collective bargaining activities, such as strikes, contract negotiations,
organizing and other activities, and affords its members the benefits of affiliation with the AFL-
CIO.

99.    In acting to disaffiliate, NYSNA violated its own past practice. In 1999, before
acting to affiliate with the UAN, the issue was presented to the Delegate Assembly, which

convened and had the opportunity to deliberate and vote by secret ballot on the issue. The Delegate Assembly recommended affiliation to the Board, which acted upon the recommendation.

100.    After NYSNA announced on its website that it planned to disaffiliate, it initiated an informal, nonbinding survey of some of the Delegates on the issue. NYSNA has not convened the Delegate Assembly for a formal vote on the issue of disaffiliation, despite the request of the Vice President of the Delegate Assembly that it do so.

101.    During the months of August and September 2007, NYSNA submitted the question of disaffiliation to a membership poll. The only members permitted to vote were those who were represented by NYSNA for purposes of collective bargaining.   A 60% majority of members voting voted against disaffiliation from NYSNA, with the vote totaling 2,312 to 1,533 **against** disaffiliation.

102.    On December 17, 2007, the NYSNA Board of Directors decided to – and did -- disaffiliate from the UAN.

103.    In disaffiliating contrary to the results of the membership poll, the NYSNA Board of Directors disregarded the will of its collective bargaining members.

104.    The Board's action in disaffiliating implicated NYSNA's collective bargaining program.

105.    This disaffiliation action violated NYSNA Policy 2-6 because the Board of Directors, a non-insulated body, improperly influenced the conduct of a collective bargaining program, that is, the relationship with the UAN.

106.    The NYSNA Board's action in disaffiliating from the UAN amounts to a breach

of contract.  The decision will have adverse effects on the collective bargaining strength of

NYSNA, and the decision was made by a non-insulated Board.

107.    NYSNA's affiliation with the UAN has been beneficial to the members of

NYSNA, including plaintiffs.  Plaintiffs have benefited from being members of a strong national

nurses union which is able to provide technical, financial, educational, legislative, and political

support for their collective bargaining activities.   Plaintiffs want to continue being part of the

UAN.

108.    As a result of defendant's breach, plaintiffs have been damaged by virtue of the

cessation of all the collective bargaining benefits of membership in the UAN.

<h3 style="text-align:center">COUNT V</h3>

<h3 style="text-align:center">STATE LAW VIOLATION OF FIDUCIARY DUTIES<br>(Unlawful Discipline of a Sitting Board Member)</h3>

109.    Plaintiffs incorporate by reference each of the preceding paragraphs (1) through

(108).

110.    This claim is pursuant to 28 U.S.C. § 1367 within the supplemental jurisdiction of

this Court and arises under the laws of the state of New York.

111.    Plaintiff Lorna Samuels is currently the elected secretary of the NYSNA Board of

Directors, and a member of the NYSNA Board's finance committee.

112.    As a duly elected member of the Board of Directors, Plaintiff Lorna Samuels has

an obligation to perform her duties in "good faith" and with a "degree of care which an ordinary

prudent person" would use, in accordance with NY CLS Bus Corp § 717 (2006).

113.    On November 30, 207, the NYSNA Board of Directors wrote to her and notified

25

her that she was being disqualified from consideration from "appointment for any NYSNA board, committee, council, task force or award," and that she would not be "nominated for any ANA or ANA-related entity, board, committee, council, task force, or panel." But in addition to these disqualifications, plaintiff Samuels was also specifically disqualified "as a sitting board member" from "all executive committee and executive session meetings."

114.    Plaintiff Samuels was deliberately excluded from the Board's vote on December 17, 2007 concerning disaffiliation.

115.    By removing plaintiff Lorna Samuels from attending executive sessions of the Board of Directors, and removing her from the finance committee, defendant has prevented her from carrying out her duties in accordance with NY CLS Bus Corp § 717 (2006).

116.    Defendant has thereby forced plaintiff Samuels to violate her legal obligations.

117.    As a further result of this improper action, plaintiff Samuels is being deprived of the opportunity to fully and meaningfully participate in the duties, obligations and responsibilities of the Board of Directors to which she was duly elected.

118.    Defendant's removal of Plaintiff Lorna Samuels from participation in "all executive committee and executive session meetings" is tantamount to unlawful removal from the Board of Directors and is in violation of NY CLS Bus Corp § 706 (2007).

119.    As a result of defendant's unlawful behavior, plaintiff Samuels is suffering irreparable harm and the deprivation of her elected office, for which she has no adequate remedy at law.

120.    As a further result of defendant's breach, plaintiff Samuels has suffered emotional distress, humiliation and damage to her reputation in the union, at her place of employment, and

in her professional relationships and associations, including the ANA.

121.    Defendant's conduct was willful, intentional and in reckless disregard of plaintiff's rights.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter the following necessary relief:

(a) An order preliminarily and permanently enjoining defendant from imposing unlawful discipline on plaintiffs;

(b) An order preliminarily and permanently enjoining defendant from interfering with the free speech rights of plaintiff;

(c) An order preliminarily and permanently enjoining defendant from retaliating against plaintiffs for their exercise of their free speech rights;

(d) An order declaring the actions of the NYSNA Board of Directors on November 30, 2007 in disciplining plaintiffs to be void and unlawful;

(e) An order restoring plaintiffs to their full membership rights and responsibilities within NYSNA;

(f) An order restoring plaintiff Lorna Samuels to her full rights and responsibilities as Secretary and member of the NYSNA Board of Directors;

(g) An order declaring that defendant's actions in disaffiliating from the UAN are in violation of NYSNA's bylaws and policies;

(h) An order preliminarily and permanently enjoining defendant from disaffiliating from the UAN unless and until NYSNA follows the procedures set forth in its bylaws and policies;

(i) An order entering judgment in favor of the plaintiffs, and against defendant, on each count of the complaint, for compensatory and punitive damages in an amount to be determined by a jury at trial;

(j) Equitable relief to plaintiffs sufficient to restore plaintiffs to the status quo ante and make them whole;

(k) An order requiring defendant to pay plaintiffs' reasonable attorneys' fees and costs incurred in bringing this action;

(l) Such other and future relief as the Court deems just and proper.

David B. Goldstein (DG 8291)
RABINOWITZ, BOUDIN, STANDARD, KRINSKY &
LIEBERMAN, P.C.
111 Broadway, Suite 1102
New York, NY 10006-1901
212-254-1111 x 103
(F) 212-674-4614

Betty Grdina (D.C.BAR #450346)
*Motion for Pro Hac Vice Admission Pending*
HELLER, HURON, CHEROKEE, LERNER, SIMON &
SALZMAN
1730 M Street N.W., Suite 412
Washington, D.C. 20036
202- 293-8090
Fax: 202-293-7110

Charles R. Both (D.C. Bar #42424)
*Motion for Pro Hac Vice Admission Pending*
1666 Connecticut Ave. N.W., Suite 500
Washington, D.C. 20009
202-833-9060
Fax: 202-463-6686

ATTORNEYS FOR PLAINTIFFS

28

## JURY DEMAND

Trial by jury is hereby demanded for each of the issues so triable.

David B. Goldstein