IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------:
                                  :
PATRICIA LEO HOLLOMAN,         :
LORNA SAMUELS, and JUDY     :
SHERIDAN-GONZALEZ,         :
                                    :        ECF
               Plaintiffs,     :        08 CV 00211 (LAP)
                                    :
     v.                           :
                                    :
NEW YORK STATE NURSES      :
ASSOCIATION,              :
                                    :
             Defendant.     :
                                    :
-------------------------------------------------------

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR PARTIAL DISMISSAL

SPIVAK LIPTON LLP
1700 Broadway, Suite 2101
New York, New York 10019
(212) 765-2100
(212) 765-8954
www.spivaklipton.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------:
                                               :
PATRICIA LEO HOLLOMAN,                          :
LORNA SAMUELS, and JUDY                         :
SHERIDAN-GONZALEZ,                              :
                                               :
                         Plaintiffs,           :          08 CV 00211 (LAP)
                                               :
          v.                                    :
                                               :
NEW YORK STATE NURSES                           :
ASSOCIATION,                                    :
                                               :
                         Defendant.            :
                                               :
-----------------------------------------------:
```

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL

SPIVAK LIPTON LLP
1700 Broadway, Suite 2101
New York, New York 10019
(212) 765-2100
(212) 765-8954
www.spivaklipton.com

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT...............................................................................................................3

    I.    PLAINTIFFS' COUNT IV FAILS TO STATE A CLAIM UNDER
        NEW YORK STATE LAW...................................................................................3

        A.    Policy 2-6 is Not a Contract.....................................................................3

        B.    The Business Judgment Rule Prevents this Court from Intervening
             in NYSNA's Corporate Decisions...........................................................5

        C.    NYSNA's Decision to Disaffiliate from the UAN is an Internal
             Union Matter Entitled to Deference..........................................................7

        D.    Policy 2-6 Was Not Violated ..................................................................10

        E.    The Allegation that Policy 2-6 Was Violated is Frivolous.......................12

    II.    PLAINTIFFS' COUNT V FAILS TO STATE A CLAIM UNDER
        NEW YORK STATE LAW.................................................................................13

        A.    BCL §§ 717 and 706 are Not Applicable to NYSNA...............................13

        B.    Plaintiffs do not have a Cause of Action under N-PCL § 717...................14

             1.    A Private Right of Action is Not Available under the
                 N-PCL's Explicit Enforcement Provisions.....................................14

             2.    N-PCL § 717 Does Not Give Rise to an Implied Remedy
                 on Behalf of Plaintiff Samuels.......................................................15

             3.    The Complaint does not allege the Elements Necessary to
                 Sustain an Action for Breach of Duty under N-PCL § 717 ..........17

        C.    There is no Private Enforcement Remedy for Monetary Damages
             under N-PCL § 706...................................................................................18

CONCLUSION...........................................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page No.**

40 W. 67th St. v. Pullman,
    760 N.Y.S.2d 745 (N.Y. 2003) ...................................................................................6

Arden v. Freydberg,
    214 N.Y.S.2d 400 (N.Y. 1961) ..................................................................................4

Auerbach v. Bennett,
    419 N.Y.S.2d 920 (N.Y. 1979) ..................................................................................6

Blaise-Williams v. Sumitomo Bank, Ltd.,
    592 N.Y.S.2d 41 (N.Y. App. Div. 1993) ...................................................................4

Brown v. Sombrotto,
    523 F.Supp. 127 (S.D.N.Y. 1981) .............................................................................8

Caliendo v. McFarland,
    175 N.Y.S.2d 869 (N.Y. Sup. Ct. 1958) ...................................................................8

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)...............................................................................1 n.2

Consarc Corp. v. Marine Midland Bank, N.A.,
    996 F.2d 568 (2d Cir.1993)........................................................................................3

Consumers Union of U.S., Inc. v. State of N.Y.,
    806 N.Y.S.2d 99 (N.Y. 2005) ...............................................................................6, 7

Cortland Asbestos Prods., Inc. v. J. & K. Plumbing and Heating Co., Inc.,
    304 N.Y.S.2d 694 (N.Y. App. Div. 1969) ................................................................3

Cushman & Wakefield, Inc. v. Equitable Life Assur. Soc. of the U.S.,
    533 N.Y.S.2d 426 (N.Y. App. Div. 1988) ................................................................4

Dennis v. Buffalo Fine Arts Acad.,
    No. 07-2220, 836 N.Y.S.2d 498 (table), 2007 WL 840996 (N.Y. Sup. Ct. 2007) .....................5

Desert Hosp. v. N.L.R.B.,
    91 F.3d 187 (D.C. Cir. 1996) .............................................................................10, 11

F.D.I.C. v. Bober,
    No. 95-CV-9529, 2003 WL 21976410 (S.D.N.Y. 2003).........................................17

Fisher v. Big Squeeze, Inc.,
     349 F.Supp.2d 483 (E.D.N.Y. 2004) ..................................................................18

Gally v. Columbia Univ.,
     22 F.Supp.2d 199 (S.D.N.Y. 1998).....................................................................5

Gilheany v. Civil Serv. Employees Ass'n, Inc.,
     395 N.Y.S.2d 717 (N.Y. App. Div. 1977) ........................................................8, 9

Gurton v. Arons,
339 F.2d 371 (2d Cir. 1964).......................................................................................8

Haywood, M.D. v. Univ. of Rochester,
     619 N.Y.S.2d 443 (N.Y. App. Div. 1994) ...........................................................4

Health-Chem Corp. v. Baker,
     915 F.2d 805 (2d Cir. 1990).............................................................................14

Highland Hosp. v. N.L.R.B.,
     861 F.2d 56 (2d Cir. 1988)..............................................................2 n.3, 10, 12

In re Midway Jewish Ctr.,
     838 N.Y.S.2d 879 (N.Y. Sup. Ct. 2007) ..............................................................7

Int'l Minerals and Res., S.A. v. Pappas,
     96 F.3d 586 (2d Cir. 1996).................................................................................3

Kamin v. Am. Express Co.,
     383 N.Y.S.2d 807 (N.Y. Sup. Ct. 1976) ..............................................................7

Kennedy v. Doyle,
     140 N.Y.S.2d 899 (N.Y. Sup. Ct. 1955) ..............................................................9

Lobosco v. N.Y. Tel. Co./NYNEX,
     727 N.Y.S.2d 383 (N.Y. 2001) ...........................................................................4

Machine Menachem, Inc. v. Hershkop,
     237 F.Supp.2d 227 (E.D.N.Y. 2002) ................................................................13

Mark G. v. Sabol,
     695 N.Y.S.2d 730 (1999)..................................................................................16

Mason Tenders Local Union 59 v. Laborers' Int'l Union of N. Am.,
     924 F.Supp. 528 (S.D.N.Y. 1996),
     aff'd, 101 F.3d 686 (2d Cir.1996) ...................................................................7, 8

N.L.R.B. v. Fin. Inst. Employees of Am. Local 1182 (Seattle-First),
    475 U.S. 192, 106 S.Ct. 1007 (1986)..................................................................9

N.L.R.B. v. N. Shore Univ. Hosp.,
    724 F.2d 269 (2d Cir. 1983)......................................................................2 n.3

Phalen v. Theatrical Protective Union No. 1,
    290 N.Y.S.2d 881 (N.Y. 1968) .......................................................................8

Pollitz v. Wabash R. R. Co.,
    100 N.E. 721 (N.Y. 1912) ...............................................................................6

Sabetay v. Sterling Drug, Inc.,
    514 N.Y.S.2d 209 (N.Y. 1987) .......................................................................4

Sim v. N. Y. Mailers' Union No. 6,
    166 F.3d 465 (2d Cir. 1999)............................................................................8

Simoni v. Civil Serv. Employees Ass'n, Inc., Local 1000,
    507 N.Y.S.2d 371 (N.Y. Sup. Ct. 1986) .........................................................6

Smith v. McGinnis,
    No. 01 Civ. 1363 (RCC)(HBP), 2004 WL 350755 (S.D.N.Y. Feb. 24, 2004)..........................14

Spellacy v. Airline Pilots Ass'n-Int'l,
    156 F.3d 120 (2d Cir.1998)..............................................................................8

Spitzer v. Grasso,
    836 N.Y.S.2d 40 (N.Y. App. Div. 2007) ...............................................15, 17, 18, 19

Steinbrenner v. Esquire Reporting Co., Inc.,
    No. 90-CV-6419, 1991 WL 102540 (S.D.N.Y. 1991)....................................17

Stern v. Gen. Elec. Co.,
    924 F.2d 472 (2d Cir. 1991) ........................................................................6, 7

Stern v. Gen. Elec. Co.,
    837 F.Supp. 72 (S.D.N.Y. 1993).....................................................................6

Zinermon v. Burch,
    494 U.S. 113, 110 S. Ct. 975 (1990)........................................................1 n.2

**Statutes**

Federal Rules of Civil Procedure

    Rule 9(b) .................................................................................................................6
    Rule 12(b)(6)...........................................................................................................1

Federal Service Labor-Management Relations Statute

    5. U.S.C. § 7103(a)(12)........................................................................................11

New York Business Corporation Law

    § 103(b)................................................................................................................13
    § 701(a) .................................................................................................................5
    § 706.............................................................................................................. *passim*
    § 717.............................................................................................................. *passim*

New York Not-for-Profit Corporation Law

    § 202(a) .................................................................................................................9
    § 706.............................................................................................................. *passim*
    § 710.....................................................................................................................7
    § 717.............................................................................................................. *passim*
    § 719...................................................................................................................15
    § 720...................................................................................................................15

National Labor Relations Act

    29 U.S.C. § 152(11) ...................................................................................10, 10 n.4
    29 U.S.C. § 158(a) ...............................................................................................10
    29 U.S.C. § 158(d) ...............................................................................................11

**Administrative Decisions**

Rockford Mem'l Hosp.,
    247 N.L.R.B. 319 (1980) ................................................................................12, 13

Sierra Vista Hospital, Inc.,
    241 N.L.R.B. 631 (1979) ......................................................................................10

## References

Joint Legislative Committee to Study Revision of Corporation Laws, Explanatory
Memoranda on Not-for-Profit Corporation Law, Article 7 (Memorandum No. 1,
January 13, 1969), Prefatory pages to McKinney's Consolidated Laws
of New York Annotated, volume 37 at XVII-XLI ........................................................15

## PRELIMINARY STATEMENT

Defendant, the New York State Nurses Association ("NYSNA"), submits this memorandum in support of its motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure (1) to dismiss Count IV of the Complaint ("Compl."), and (2) to dismiss Count V in its entirety, or in the alternative, to dismiss in Count V the claim arising under the New York Business Corporation Law ("BCL") § 717 and the claim for damages under BCL § 706. In Counts I through III, Plaintiffs allege violations by NYSNA of the Labor-Management Reporting and Disclosure Act ("LMRDA").[1] In Counts IV and V, they allege violations of New York state law and invoke the court's supplemental jurisdiction.

NYSNA is a labor organization representing registered nurses and is a not-for-profit corporation organized under the laws of the State of New York. (Compl. ¶ 1, 4.)[2] NYSNA is governed by a Board of Directors ("Board"). (Compl. ¶¶ 1, 4, 6.) Plaintiffs are members of NYSNA. (Compl. ¶ 4.) Plaintiffs Patricia Leo Holloman ("Holloman") and Judy Sheridan-Gonzalez ("Sheridan-Gonzalez") are former members of NYSNA's Board. (Compl. ¶ 5.) Plaintiff Lorna Samuels ("Samuels") is an officer and current Board member. (Id.) NYSNA was affiliated with the United American Nurses ("UAN"), a national labor organization until December 17, 2007, when a majority of the NYSNA Board voted to disaffiliate. (Compl. ¶¶ 8, 9, 10, 53.) Plaintiffs were opposed to disaffiliation. (Compl. ¶¶ 26, 29.)

---

[1] The LMRDA claims are not subjects of this motion, and will be addressed on summary judgment.

[2] For purposes of this motion only, Plaintiffs' allegations shall be deemed to be true. Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979 (1990); Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

In Count IV, Plaintiffs allege that the decision by the Board to disaffiliate from the UAN violated the Board's own policy entitled "Policy 2-6: Legal and Fiduciary Obligations" ("Policy 2-6"), and that Policy 2-6 is a "contract between NYSNA and its Board of Directors."[3]

Count IV fails to state a breach of contract claim under New York law. Plaintiffs' allegations are insufficient to show that Policy 2-6 was ever intended to be a contract between NYSNA and its Board members. (Compl. ¶¶ 91-108.) Furthermore, Plaintiffs fail to allege the Board acted in bad faith or fraudulently, which is required for this court to abandon the business judgment rule applicable to the management decisions of corporate boards, or to disregard the deference paid to internal union management decisions. Finally, Plaintiffs' allegation that the decision to disaffiliate violated labor insulation requirements or Policy 2-6 is, even under *de novo* review, frivolous.

Count V alleges that NYSNA violated Sections 717 and 706 of the BCL by excluding Plaintiff Samuels from the disaffiliation vote and by excluding her from Board executive committee and executive session meetings. (Compl. ¶¶ 109-121.) Count V fails on its face since the BCL does not apply to not-for-profit corporations. However, even under the New York Not-for-Profit Corporation Law ("N-PCL"), which governs NYSNA, Plaintiffs fail to allege sufficient facts to support a claim of breach of duty by any director since they do not allege any injury to NYSNA as a corporation. Furthermore, there is no private right of action against a

---

[3]   Policy 2-6 incorporates, *inter alia*, the federal labor law doctrine of "insulation." The insulation portion of Policy 2-6 was a response to the Second Circuit's decision in N.L.R.B. v. N. Shore Univ. Hosp., 724 F.2d 269 (2d Cir. 1983), in which an employer was able to avoid bargaining with NYSNA by asserting that supervisory employees on NYSNA's Board had influence over NYSNA's collective bargaining activities, in violation of Section 8(a)(2) of the National Labor Relations Act. Because supervisors have on occasion been members of NYSNA's Board, the Board adopted Policy 2-6, which states, *inter alia*, that the "board cannot participate in or influence the conduct of [NYSNA's] collective bargaining program." The Second Circuit has upheld NYSNA's insulation policy in the face of employer challenges. See Highland Hosp. v. N.L.R.B., 861 F.2d 56 (2d Cir. 1988).

corporation under N-PCL § 717, nor a private right to monetary damages under either statutory provision.


## ARGUMENT

## I. PLAINTIFFS' COUNT IV FAILS TO STATE A CLAIM UNDER NEW YORK STATE LAW

### A.    Policy 2-6 is Not a Contract

Plaintiffs allege in Count IV that NYSNA breached a contract.  The "contract" NYSNA allegedly breached was a policy adopted by NYSNA's Board.  Plaintiffs assert that Policy 2-6 is a contract between NYSNA and its own Board.  (Compl. ¶ 94.)  However, contrary to Plaintiffs' assertions, there is no support whatsoever that a policy adopted by a not-for-profit corporation's board of directors is a contract.

Policy 2-6 is not a contract within that term's basic definition.  A contract is formed when all of the contracting parties express intent to be bound and where all of the essential terms of the agreement have been spelled out. Int'l Minerals and Res., S.A. v. Pappas, 96 F.3d 586, 593 (2d Cir. 1996); see also Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 574 (2d Cir.1993).  "In order to complete a bilateral contract, the offeree must in fact make a promise to the offeror, and a promise, as the offeree should reasonably understand, is something which involves, if not communication, at least attempted communication." Cortland Asbestos Prods., Inc. v. J. & K. Plumbing and Heating Co., Inc., 304 N.Y.S.2d 694, 696 (N.Y. App. Div. 1969).

There is no allegation that NYSNA, the corporation, intended to "contract" with its Board via this policy.  Indeed, the policy contains no promise by NYSNA, as a corporation, to do anything *vis-á-vis* its Board.  At most, Policy 2-6 is an expression of the Board's intent or willingness to adhere to certain guidelines in the future.  The "expression of an intention or

3

willingness to do something in the future does not give rise to contractual liability unless it is made with promissory intent." Cushman & Wakefield, Inc. v. Equitable Life Assur. Soc. of the U.S., 533 N.Y.S.2d 426, 428 (N.Y. App. Div. 1988); see also Haywood, M.D. v. Univ. of Rochester, 619 N.Y.S.2d 443, 444 (N.Y. App. Div. 1994); Arden v. Freydberg, 214 N.Y.S.2d 400, 401-02 (N.Y. 1961).

Failing to treat a corporate policy as a contract is not an unfamiliar tenet in New York. For example, the Court of Appeals has refused to find that the expression of corporate policy in an employer manual creates a binding limitation on an employer's discretionary right to dismiss an at-will employee absent evidence of promissory intent. Sabetay v. Sterling Drug, Inc., 514 N.Y.S.2d 209, 213 (N.Y. 1987); see also Lobosco v. N.Y. Tel. Co./NYNEX, 727 N.Y.S.2d 383, 386 (N.Y. 2001) (provision of company's code of conduct could not support breach of contract action by employee). Furthermore, where a company published a written policy that discrimination against employees would not be tolerated, the court held that such a general policy statement was nothing more than an explanation of existing law concerning discrimination and could not serve as a basis for a breach of contract claim. Blaise-Williams v. Sumitomo Bank, Ltd., 592 N.Y.S.2d 41, 42 (N.Y. App. Div. 1993). Policy 2-6 is nothing more than a general policy statement explaining the existing law concerning the Board members' fiduciary obligations under the N-PCL and decision-making requirements under labor law. Accordingly, this policy does not rise to the level of an actionable contract.

Even if Policy 2-6 is somehow construed as a promise by the Board members to abide by certain standards of decision-making behavior, "general promises about ethical standards are far different from the types of specific promises which have led to valid breach of contract claims."

4

Gally v. Columbia Univ., 22 F.Supp.2d 199, 207 (S.D.N.Y. 1998). The Plaintiffs' allegations

fail to show that a contract existed, much less that a contract was breached by Defendant.

State law mandates that a not-for-profit corporation be managed by its board of directors.

N-PCL § 701(a). NYSNA's Board exercised its management prerogative by implementing

guidelines in Policy 2-6. Here, as with the petitioners in Dennis v. Buffalo Fine Arts Acad., No.

07-2220, 836 N.Y.S.2d 498 (table), 2007 WL 840996 (N.Y. Sup. Ct. 2007), Plaintiffs:

> seem to confuse the corporation's purpose in its certificate of incorporation, a document
> filed with the Department of State, with its mission and its management policies, which
> are internal documents adopted and implemented by the Board. The Board of Directors
> is free to change and amend its mission, its … Policy, and its … Strategic Plan, without
> amending its certificate of incorporation, so long as they do not pursue endeavors outside
> the stated purpose of the corporation.

2007 WL 840996, at *4. In Dennis, petitioners (members of the respondent not-for-profit

corporation), sought injunctive relief alleging that the respondent corporation's decision to divest

itself of a certain amount of artwork had and would violate certain management policies in

violation of the N-PCL. The court denied the injunction and granted respondents' cross-motion

to dismiss the petition in its entirety, stating that the policy implemented by the corporation "in

no way constitutes a departure, or an ultra vires act, in violation of its corporate purposes." Id. at

*4-5.

Plaintiffs here claim NYSNA breached Policy 2-6. However, the Board enacted Policy

2-6, and the Board remains free to interpret, change or amend its management policies. Plaintiffs

do not—and cannot—assert that NYSNA acted in contravention of its corporate purposes.

**B.    The Business Judgment Rule Prevents this Court from Intervening in NYSNA's Corporate Decisions**

The business judgment rule "bars judicial inquiry into actions of corporate directors taken

in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of

corporate purposes." Auerbach v. Bennett, 419 N.Y.S.2d 920, 926-27 (N.Y. 1979); Consumers

Union of U.S., Inc. v. State of N.Y., 806 N.Y.S.2d 99, 118 (N.Y. 2005) (applying business

judgment rule to not-for-profit corporation). The rule, which has been long recognized in New

York, "is a common-law doctrine by which courts exercise restraint and defer to good faith

decisions made by boards of directors..." 40 W. 67th St. v. Pullman, 760 N.Y.S.2d 745, 750 (N.Y.

2003). This doctrine places "[q]uestions of policy of management...solely" in the hands of

corporate directors, "for their powers therein are without limitation and free from restraint, and

the exercise of them for the common and general interests of the corporation may not be

questioned, although the results show that what they did was unwise or inexpedient." Pollitz v.

Wabash R. R. Co., 100 N.E. 721, 724 (N.Y. 1912).

     The actions of corporate directors are subject to judicial review "only upon a showing of

fraud or bad faith." Stern v. Gen. Elec. Co., 924 F.2d 472, 476 (2d Cir. 1991); Stern v. Gen.

Elec. Co., 837 F.Supp. 72, 76-77 (S.D.N.Y. 1993). Such allegations "must be supported by

particular statements indicating the factual circumstances on which the theory of fraud is based."

Stern, 924 F.2d at 476; Fed. R. Civ. P. 9(b) (requiring particularity in allegations of fraud or

mistake).

     There are no allegations in the Complaint sufficient to establish that the Board acted in

bad faith or fraudulently when it decided to disaffiliate from the UAN. There is no allegation

that any of the directors suffered from a conflict of interest or otherwise breached a fiduciary

duty when they made the decision to disaffiliate. Rather, the Plaintiffs claim the Board made a

decision without a recommendation from a delegate assembly—a lower body that is not charged

or authorized to manage NYSNA either by statute or by NYSNA's certificate of incorporation.

See Simoni v. Civil Serv. Employees Ass'n, Inc., Local 1000, 507 N.Y.S.2d 371, 377 (N.Y. Sup.

Ct. 1986) (union organized as a not-for-profit corporation is to be managed by its board of directors and any attempt by the union's delegates to place general management responsibility elsewhere without so specifying in the certificate of incorporation would be a violation of N-PCL § 710).

Essentially, Plaintiffs disagree with the Board's decision to disaffiliate. That is all. At most, the decision to disaffiliate may cause some decrease in whatever alleged benefit members of NYSNA may have enjoyed as a result of NYSNA's affiliation with the UAN. However, such consequences are insufficient to cause this court to review the decision of NYSNA's Board. In re Midway Jewish Ctr., 838 N.Y.S.2d 879, 884 (N.Y. Sup. Ct. 2007) (vote of not-for-profit board to approve consolidation of religious congregation with another enjoyed business judgment rule where there was no allegation of bad faith); Stern, 924 F.2d at 477 (where statements in complaint do not provide sufficient allegation of directors' bad faith to meet requirements of business judgment rule, claims were dismissed); Consumers Union of U.S., 806 N.Y.S. 2d at 118 (business judgment rule barred claim that insurer's board breached fiduciary duty by inviting legislators to decide how its assets would be used after its conversion to a for-profit corporation); Kamin v. Am. Express Co., 383 N.Y.S.2d 807, 810 (N.Y. Sup. Ct. 1976) (a complaint which alleges merely that some course of action other than that pursued by the board of directors would have been more advantageous gives rise to no cognizable cause of action).

**C.    NYSNA's Decision to Disaffiliate from the UAN is an Internal Union Matter Entitled to Deference**

There is a well-established policy of avoiding judicial interference in union self-governance and internal affairs. Mason Tenders Local Union 59 v. Laborers' Int'l Union of N. Am., 924 F.Supp. 528, 542 (S.D.N.Y. 1996) (citing cases), aff'd, 101 F.3d 686 (2d Cir.1996). As stated by the Second Circuit:

7

> Courts have no special expertise in the operation of unions which would justify a broad
> power to interfere. The internal operations of unions are to be left to the officials chosen
> by the members to manage those operations except in the very limited instances expressly
> provided by the [LMRDA]... General supervision of unions by the courts would not
> contribute to the betterment of the unions or their members or to the cause of labor-
> management relations.

Gurton v. Arons, 339 F.2d 371, 375 (2d Cir. 1964).

Courts have consistently held that a union's "interpretation of its own constitution is entitled to 'great deference' and will be upheld unless 'patently unreasonable'." Mason Tenders, 924 F.Supp. at 543 (internal citations and quotations omitted). Thus, while courts should ignore interpretations that are contrary to the plain meaning of contract language, a union's interpretation of its own constitution is entitled to great deference. Sim v. N. Y. Mailers' Union No. 6, 166 F.3d 465, 470 (2d Cir. 1999). Courts will defer to a union's interpretation of its governing documents unless that interpretation is patently unreasonable. Id.; see also Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 127 (2d Cir. 1998). Plaintiffs point to no constitutional provision or by-law granting the delegate assembly the right to make a binding recommendation to the NYSNA Board. NYSNA did not act improperly or even unreasonably in contravention of its constitution and by-laws when its Board decided to disaffiliate from the UAN.

Similarly, New York courts will only reluctantly interfere with the administration of a union. Brown v. Sombrotto, 523 F.Supp. 127, 134 (S.D.N.Y. 1981); Gilheany v. Civil Serv. Employees Ass'n, Inc., 395 N.Y.S.2d 717, 719 (N.Y. App. Div. 1977). A union is "allowed a wide range of reasonableness in serving the unit it represents." Phalen v. Theatrical Protective Union No. 1, 290 N.Y.S.2d 881, 890 (N.Y. 1968). Moreover, New York courts will give "impelling weight" to the union's own interpretation of its constitution, Caliendo v. McFarland, 175 N.Y.S.2d 869, 876 (N.Y. Sup. Ct. 1958), and will not interfere in the internal affairs of a

8

not-for-profit corporation, including a labor union, "absent a showing of fraud or substantial wrongdoing." Gilheany, 395 N.Y.S.2d at 719.

The Plaintiffs here have not alleged any fraud or substantial wrongdoing. Rather, they allege that the way the Board voted to disaffiliate breached a contract. Whether NYSNA should or should not have disaffiliated with the UAN was a controversial question, to be sure. However, such a question is not for the courts to resolve:

> A court of equity will not interfere on matters of internal controversy unless there has been wrongful interference with a substantial right and a grave necessity exists for court action.
> When there has been substantial compliance with the rules of an organization, a member has not been damaged by failure of a strict compliance . . .

Kennedy v. Doyle, 140 N.Y.S.2d 899, 901-902 (N.Y. Sup. Ct. 1955) (emphasis added) (internal citations omitted).

Plaintiffs also allege that NYSNA's decision-making process with respect to the disaffiliation decision was not in conformity with a past practice. (Compl. ¶ 59.) However, New York courts have declined to intervene in matters even where there have been substantial irregularities in procedures. Gilheany, 395 N.Y.S.2d 719 (court refused to step in even where voting irregularities were alleged because of the "general rule of judicial reluctance to interfere with the internal affairs of a not-for-profit corporation").

The Supreme Court has recognized that matters of affiliation are internal union affairs. N.L.R.B. v. Fin. Inst. Employees of Am. Local 1182 (Seattle-First), 475 U.S. 192, 200, 106 S.Ct. 1007, 1011-12 (1986). The N-PCL explicitly grants to corporations the power to "be a member, associate or manager of other not-for-profit activities...." N-PCL § 202 (a)(15). NYSNA's Board exercised its statutory prerogative and voted to sever its association with the UAN. That decision, clearly an internal union matter as well as a corporate business decision, is not

reviewable by this court, especially in light of Plaintiffs' failure to allege that NYSNA's Board

acted in bad faith.

**D.    Policy 2-6 Was Not Violated**

Even if this court were inclined to review whether NYSNA in some way violated Policy

2-6, Plaintiffs still fail.  Plaintiffs allege that the NYSNA Board, being a "non-insulated body," is

not allowed to make a decision implicating the collective bargaining program. (Compl. ¶¶ 104-

105.)  However, the Board did not violate Policy 2-6 or the insulation doctrine.

The insulation doctrine is rooted in Section 8(a)(2) of the National Labor Relations Act

("NLRA") which makes it an unfair labor practice for an employer to dominate or interfere with

the administration of a union. 29 U.S.C. § 158(a)(2).  The National Labor Relations Board

("NLRB"), the administrative agency authorized to enforce the NLRA, has held that a labor

organization can be disqualified from serving as a bargaining representative if its collective

bargaining functions are not "insulated" from supervisory influences, i.e. active participation of

supervisors, as defined by 29 U.S.C. § 152 (11)[4], in the labor organization itself. Sierra Vista

Hospital, Inc., 241 N.L.R.B. 631, 632-635 (1979).  The NLRB has held that "in reviewing such

claims…it is the employer's burden to prove a clear and present danger of a conflict of interest."

Desert Hosp. v. N.L.R.B., 91 F.3d 187, 190 (D.C. Cir. 1996) (emphasis added); Sierra Vista

Hosp., Inc., 241 N.L.R.B. at 633 (1979) (burden of employer is a heavy one); Highland Hosp. v.

N.L.R.B., 861 F.2d 56, 58 (2d Cir. 1988).  Significantly, Plaintiffs do not allege that any member

of the Board was in fact a statutory supervisor at the time the disaffiliation vote was taken.  They

---

[4] "Supervisor" is defined as "any individual having authority, in the interest of the employer, to
hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other
employees, or responsibly to direct them, or to adjust their grievances, or effectively to
recommend such action, if in connection with the foregoing the exercise of such authority is not
of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C.
§ 152 (11).

only allege that there are "non-union members" on the Board, and that two Board members were "managers in their previous employment." (Compl. ¶¶ 22, 57.) (Emphasis supplied.)  Not being a union member or being a manager in a prior job clearly do not make one a statutory supervisor. Accordingly there is no technical violation of the federal insulation doctrine since no statutory supervisors are alleged to have influenced a collective bargaining function.

Furthermore, "collective bargaining functions" do not include a decision by a not-for-profit corporation to affiliate or disaffiliate with another organization.  The NLRA states:

> to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party...

29 U.S.C. § 158(d).  The Federal Service Labor-Management Relations Statute ("FSLMRS") defines collective bargaining as:

> the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees and to execute, if requested by either party, a written document incorporating any collective bargaining agreement reached...

5 U.S.C. § 7103(a)(12).  These statutory definitions clearly show that collective bargaining and its processes were intended to encompass activities and obligations of one party (union or employer) as it relates to the other party.  The case law describing insulation supports this assertion.

For example, in Desert Hosp., 91 F.3d at 190, the court found that where a nurses' association's board of directors did not play a role in "bargaining strategy, strike policies, collective bargaining policy, contract ratification, grievances or arbitration," there was no

11

violation of the NLRB's insulation doctrine. The Second Circuit actually examined NYSNA's structure and stated that:

> the evidence is now clear that the board of directors is not involved in, nor can it interfere with, collective bargaining matters. It does not vote on collective bargaining agreements, and it does not have authority to force [a bargaining unit] to approve an agreement.

Highland Hosp., 861 F.2d at 59. Additionally, the Second Circuit found that since NYSNA's Board was not involved with the "particulars of organizing, bargaining, or the handling of grievances," there was no violation of the insulation doctrine. Id. The NLRB in Rockford Mem'l Hosp., 247 N.L.R.B. 319, 320 (1980) found no violation of the insulation doctrine where "ultimate responsibility for collective bargaining" did not lie with the board of directors:

> All collective bargaining agreements are negotiated by the local committee without interference by [the] board of directors. This responsibility for collective bargaining extends to the handling of grievances filed pursuant to the contract...Nor does the...board of directors have any authority to pass on contract proposals developed at the local level.

### E.    The Allegation that Policy 2-6 Was Violated is Frivolous

Plaintiffs concede that it was NYSNA's Board of Directors that "acted to affiliate with the UAN" originally. (Compl. ¶¶ 17, 59.) They appear to be suggesting that the Board's decision to affiliate was permissible because it followed a recommendation by a delegate assembly consisting of rank and file members. (Compl. ¶¶ 14, 17, 59, 60.) But none of the dozens of "insulation" cases decided by the NLRB or federal courts support the proposition that a union can avoid NLRA § 8(a)(2) liability if a Board containing supervisors with decision-making powers has acted on a "recommendation" by non-supervisors. To the contrary, "insulation" requires that a Board containing supervisors not be "involved in" collective bargaining matters and that it cannot "interfere with" collective bargaining matters. N.L.R.B. v. Highland Hosp., 861 F.2d at 59; see also Rockford Mem'l Hosp., 247 N.L.R.B. at 320

(insulation doctrine depends on who has "ultimate authority" for collective bargaining decisions).

Here, where there is no allegation that a recommendation from the delegate assembly has any binding force under NYSNA's governing documents, the theory that the Board's affiliation vote was proper under the "insulation" doctrine whereas the disaffiliation vote was not is simply frivolous.  The affiliation vote in 1999 and the disaffiliation vote in 2007 did not violate the "insulation" doctrine for a simple reason—they do not involve "collective bargaining."  The existence of a "recommendation" from a subordinate body *vel non* is simply irrelevant.

## II.    PLAINTIFFS' COUNT V FAILS TO STATE A CLAIM UNDER NEW YORK STATE LAW

### A.    BCL §§ 717 and 706 are Not Applicable to NYSNA

In Count V, Plaintiff Samuels complains that she was excluded from the NYSNA Board of Directors' disaffiliation vote, was barred from executive sessions and executive committee meetings of the NYSNA Board and was removed from the Board's finance committee.  She alleges that these actions caused her to violate her legal obligations as a Director under BCL § 717 (Compl. ¶ 115) and were "tantamount" to unlawful removal from the Board in violation of BCL § 706. (Compl. ¶ 118.)  Samuels seeks monetary damages for the alleged breaches of BCL §§ 717 and 706 and equitable relief for "reinstatement" to the Board.

However, as stated in ¶ 4 of the Complaint, NYSNA is a New York not-for-profit corporation and therefore not subject to BCL §§ 717 and 706.  (See N-PCL § 103(b).) ("The general corporation law does not apply to a corporation of type or kind to which this chapter applies"); Machine Menachem, Inc. v. Hershkop, 237 F.Supp.2d 227, 239 (E.D.N.Y. 2002) ("It was the intent of the Legislature that [the N-PCL] and not the general corporation law was to apply to [not-for-profit] corporations").  Hence, Count V must be dismissed.

13

### B.    Plaintiffs do not have a Cause of Action under N-PCL § 717

Assuming *arguendo* that Plaintiffs seek to amend the Complaint to assert a claim under the N-PCL, which is applicable to NYSNA as a not-for-profit organization, amendment would be futile under that statutory provision.  N-PCL § 717 contains provisions that are largely analogous to the provisions of BCL § 717.  However, amendment of the Complaint to assert claims under N-PCL § 717 would fail to state a cause of action.  See Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("where…there is no merit in the proposed amendments, leave to amend should be denied."); Smith v. McGinnis, No. 01 Civ. 1363 (RCC)(HBP), 2004 WL 350755, at *1 (S.D.N.Y. Feb. 24, 2004) (motion to amend denied because proposed claims would be futile).  Specifically, Plaintiff Samuels has no private cause of action under the explicit remedies of the N-PCL, and N-PCL § 717 does not give rise to any implied private remedy for breach of fiduciary duty, let alone one for monetary damages.  Moreover, even if such a private remedy were available under § 717, the complaint fails to allege facts sufficient to sustain an action for breach of duty.

1.    A Private Right of Action is Not Available under the N-PCL's Explicit Enforcement Provisions

The N-PCL § 717 defines the scope of duties of directors, providing that "[d]irectors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinary prudent men would exercise under similar circumstances in like positions." N-PCL § 717(a).

The memoranda by the Joint Legislative Committee to Study Revision of Corporation Laws give a clear and comprehensive statement of the New York State Legislature's intended methods of enforcing the rights, obligations and duties arising under N-PCL § 717:

14

> Actions to enforce the duty of care and liability of directors and officers may be brought by the Attorney General as well as by the corporation, and – in the right of the corporation – by a director, a receiver, a trustee in bankruptcy, a judgment creditor, a member (derivatively), or, if the certificate of incorporation or the by-laws so provide, by a holder of a subvention certificate or any other contributor to the corporation of cash or property of the value of $1,000 or more.

J. Legis. Comm. to Study Revision of Corp. Laws, Explanatory Memoranda on Not-For-Profit Corporation Law, Article 7 (Memorandum No. 1, January 13, 1969), Prefatory pages to McKinney's Consolidated Laws of New York Annotated volume 37 at XVII-XLI.

The explicit remedies for a director's breach of duty under N-PCL § 717 are thus limited to actions on behalf of the corporation, brought against a director or directors by the Attorney General, the members, other members of the Board, or other persons specifically enumerated in the statute. See N-PCL § 719 ("Liabilities of directors in certain cases"); N-PCL § 720 ("Actions on behalf of the corporation"). There simply is no provision in the N-PCL for a private action against the corporation on behalf of a director.

    2.    N-PCL § 717 Does Not Give Rise to an Implied Remedy
          on Behalf of Plaintiff Samuels

In Spitzer v. Grasso, 836 N.Y.S.2d 40, 47 (N.Y. App. Div. 2007), where the Attorney General asserted causes of action not explicitly authorized under the N-PCL, the New York State Supreme Court, Appellate Division, relied upon the "standard canon of construction of *expressio unius est exclusio alterius*" to "infer that the expression of authority to bring certain causes of action indicates an exclusion of others." Id. (internal citations omitted).

In discussing whether the N-PCL gives rise to an implied right of action, the Grasso court identified three "essential" factors: (1) "whether the plaintiff is one of the class for whose particular benefit the statute was enacted;" (2) "whether recognition of a private right of action

would promote the legislative purpose;" and (3) "most important… whether creation of such a

right would be consistent with the legislative scheme." Id. at 48, n.6 (internal citations omitted).

The court discussed at length the "most important" factor – legislative intent:

> Because of the Legislature's plenary authority over its choice of goals and the methods to
> effectuate them, a private right of action should not be judicially sanctioned if it is
> incompatible with the enforcement mechanism chosen by the legislature or with some
> other aspect of the overall statutory scheme… Where the legislature has not been
> completely silent but has instead made express provision for civil remedy, albeit a
> narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to
> fashion a different remedy, with broader coverage.

Id. at 48 (internal citations omitted). The court then turned specifically to the N-PCL to

determine whether it gives rise to implied rights of action.

> Indisputably, and as is evident from both the text of the N-PCL and the three explanatory
> memoranda prepared by the Joint Legislative Committee to Study Revision of
> Corporation Laws which accompanied the N-PCL when it was enacted by chapter 1066
> of the Laws of 1969, the N-PCL is a comprehensive enactment. As is reflected in various
> sections of the N-PCL, the "Legislature specifically considered and expressly provided
> for enforcement mechanisms."

Id. at 49 (emphasis added) (internal citations omitted). Comparing the remedial provisions of the

N-PCL to those under Title 4 of the New York Social Services Law discussed in Mark G. v.

Sabol, the court favorably cited the Sabol court's declaration that "[c]onsidering that the statute

gives no hint of any private enforcement remedy for money damages, we will not impute one to

the lawmakers." Id. at 48-49 (citing Mark G. v. Sabol, 695 N.Y.S.2d 730, 734 (1999)) (emphasis

added).

As discussed above, the "comprehensive" enforcement mechanisms of the N-PCL are

limited to suits brought on behalf of the corporation. In enacting the N-PCL, the Legislature gave

no hint of any private enforcement remedy by a director against the corporation, let alone a

private remedy for monetary damages. Plaintiffs therefore have no right to damages under the N-

PCL.

16

Moreover, Samuels is not seeking enforcement of § 717 as a member of the "class of individuals for whose particular benefit the statute was enacted" but as an individual director. The duty of care established by § 717 is the director's duty to the corporation and its members, not the reverse. By making this duty enforceable by individuals or classes of individuals on behalf of the corporation, the Legislature provided clear indicia of whose rights it sought to protect: the members of the corporation—not the directors.

Accordingly, Plaintiff Samuels has no implied right to sue NYSNA for damages under N-PCL § 717.

### 3.    The Complaint does not allege the Elements Necessary to Sustain an Action for Breach of Duty under N-PCL § 717.

As shown above, Samuels has no private right of action to enforce the provisions of N-PCL § 717. However, assuming *arguendo* that she does have standing to bring such an action, and assuming further that, contrary to the principles enunciated in Grasso, N-PCL§ 717 creates an implied cause of action against a corporation that has "forced a director to violate her legal obligations," (see Compl. ¶ 116), Samuels' allegations would still fail to state a claim under that statute.

In an action alleging that a director has breached his/her duty of care, one must "establish that the offending party's actions were 'a substantial factor' in causing an identifiable loss." F.D.I.C. v. Bober, No. 95-CV-9529, 2003 WL 21976410, at *1 (S.D.N.Y. 2003) (internal citations omitted). See also Steinbrenner v. Esquire Reporting Co., Inc., No. 90-CV-6419, 1991 WL 102540, at *10 (S.D.N.Y. 1991) ("Because the very nature of a fiduciary duty is the requirement the fiduciary act in good faith and candor to avoid harm to the party who is owed the duty, actual damage is a necessary component of this claim as well.").

17

Here, there is no alleged loss to the corporation resulting from Samuels' claim that she "violate[d] her legal obligations." The Complaint does not allege that had Plaintiff Samuels voted on the disaffiliation, the result would have been different. Nor does she allege any other circumstances where she "violate[d] her legal obligations" to NYSNA.

The only injuries Samuels has identified that resulted from NYSNA's alleged inducement of Samuels' breach are "emotional distress, humiliation and damage to her reputation in the union, at her place of employment, and in [Samuels] professional relationships and associations, including the ANA." However, under New York law, "emotional harm… does not provide a basis for recovery on a claim of breach of fiduciary duty." Fisher v. Big Squeeze, Inc., 349 F.Supp.2d 483, 488 (E.D.N.Y. 2004).

A claim that a Director "violate[d] her legal duties" because of the Corporation's actions does not state a claim on behalf of the Director under N-PCL § 717. Furthermore, damages for "emotional distress" are simply unavailable as a remedy for an alleged breach of fiduciary duty. Accordingly, amendment of the complaint to assert violations of N-PCL § 717 would be futile.

### C.    There is no Private Enforcement Remedy for Monetary Damages under N-PCL § 706

Similarly, it would be futile for Plaintiffs to amend their Complaint to assert claims under the N-PCL section analogous to BCL § 706 since there is no remedy for private monetary damages available under N-PCL § 706.[5] Assuming *arguendo* that Samuels was in fact unlawfully "removed," she would still have no private right of action for monetary damages under N-PCL § 706. As Grasso holds, where "the statute gives no hint of any private enforcement remedy for money damages, [the Court] will not impute one to the lawmakers."

---

[5] The equitable remedy of reinstatement would be available to Plaintiff Samuels if she could prove that she was in fact removed. However, the letter excluding her from executive meetings and executive sessions has already been rescinded, and therefore, Plaintiff Samuels would be unable in good faith to amend the Complaint to seek this remedy.

Spitzer v. Grasso, 836 N.Y.S.2d at 48-49. Accordingly, even if Samuels could show that she was unlawfully removed as a matter of law, her claim for monetary damages under § 706 could not survive. Thus the sole remedy available to Samuels for NYSNA's alleged violation of § 706 would be reinstatement.

## CONCLUSION

For the foregoing reasons, Count IV and Count V of Plaintiffs' Complaint should be dismissed. In the alternative to dismissing Count V in its entirety, the claim arising under the BCL § 717 and the claim for damages under BCL § 706 should be dismissed.

Dated: New York, New York
      March 3, 2008

                        Respectfully submitted,

                        SPIVAK LIPTON LLP
                        Attorneys for Defendant
                        New York State Nurses Association
                        1700 Broadway, Suite 2101
                        New York, New York 10019
                        Tel: (212) 765-2100
                        Fax: (212) 765-8954
                        Email: fmoss@spivaklipton.com

                        By: /s/ Franklin K. Moss
                              Franklin K. Moss (FM 9161)
                              Hope Pordy (HP 6253)
                              Nicole Cuda Pérez (NP 6663)

On Brief:
Thomas Feeley

19