IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------:
                                                      :
PATRICIA LEO HOLLOMAN,                                :
LORNA SAMUELS, and JUDY                               :
SHERIDAN-GONZALEZ,                                    :
                                                      :
                            Plaintiffs,               :        08 CV 00211 (LAP)
                                                      :        ECF
            v.                                        :
                                                      :
NEW YORK STATE NURSES                                 :
ASSOCIATION,                                          :
                                                      :
                            Defendant.                :
                                                      :
-----------------------------------------------------:

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

## TABLE OF CONTENTS

INTRODUCTION ……………………………………………………………1

STATEMENT OF FACTS……………………………………………………2

    A.    Background………………………………………………………..2

    B.    Insulation Doctrine……………………………………………...3

    C.    Articles of Incorporation, Bylaws and Rules…………………………4

    D.    Majority of Members Vote Against Disaffiliation………………………5

    E.    Suppression of Plaintiff's Dissent and Disciplinary Reprisal…………  6

    F.    The Board's Disaffiliation Decision…………………………………..8

ARGUMENT …. ………………………………………………………… 8

    I.    Applicable Standard of Review…………………………………….8

    II.    NYSNA's Bylaws and Rules Form a Contract with its Members……… 9

    III.    NYSNA's Bylaws and Rule (Policy 2-6) Were Breached Because
Disaffiliation Involved a Collective Bargaining Issue
and Weakened the Union ………………………………………… 12

    IV.    The Business Judgment Does Not Apply………………………………  15

    V.    Policy 2-6 Implemented the Insulation Policies
Requisite to the Union Functions of
NYSNA…………………………………………………………17

CONCLUSION ……………………………………………………….. 20

i

## TABLE OF CASES

**CASES**

*Anderson v. Bd. of Dirs. of the Powelton Club*, 183 Misc. 2d 200, 202 (N.Y. Misc. 1999)

*ATSI Communication, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)

*Ballas v. McKiernan*, 63 Misc. 2d 432, 434, 312 N.Y.S. 2d 204, 207 (1970)

*Boykin v. Keycorp*, 2008 U.S. App. LEXIS 6401 (2d Cir. 2008)

*Brown  v Sombrotto*, 523 F. Supp. 127, 133 (S.D.N.Y. 1981)

*Caliendo v. McFarland*, 13 Misc. 2d 183, 188 (N.Y. Misc. 1958)

*Edison Club v. Harvey*, 106 Misc. 2d 704, 705 (N.Y. Misc. 1981)

*Exec. Bd., Local 234 v. Transp. Workers Union of Am.*, 338 F.3d 166, 170 (3d Cir. Pa. 2003)

*Executive Bd. Local 1302  v. United Brotherhood of Carpenters & Joiners*, 477 F.2d 612, 614-615 (2d Cir. 1973)

*Garofano v. United States Trotting Association.*, 78 Misc. 2d 33, 37 (N.Y. Misc. 1974)

*Hellman v. Hellman*, 2008 NY Slip Op 28086, 17 (N.Y. Misc. 2008).

*Highland Hosp. v. NLRB*, 861 F.2d 56, 57  (2d Cir. 1988)

*Hishon v. King & Spalding*, 467 U.S. 69 (1984)

*Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006), aff'd, 552 U.S. --, 128 S. Ct. 1147, (2008)

*Kendrick v. Watermill Beach Club, Inc.*, 8 Misc. 2d 798, 802 (N.Y. Misc. 1957)

*Kent v. Quicksilver Mining Co.*, 78 N.Y. 159 (1879)

*Maraia v. Valentine*, 21 A.D.3d 934, 935 (N.Y. App. Div. 2005)

*Matter of Marandino v. Westchester Country Club, Inc.*, 2006 NY Slip Op 7480, 1 (N.Y. App. Div. 2006)

*N.L.R.B. v. Fin. Inst. Employees  of Am. Local 1182*, 475 U.S. 192, 202 (1986)

*NLRB v. North Shore University Hosp.*, 724 F.2d 269 (2d Cir. 1983)

*New York Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1074 (D.C. Cir. 2007)

*Robinson v. Dahm*, 94 Misc. 729, 735 (N.Y. Misc. 1916)

*Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)

*Schonfeld v. Raftery*, 359 F. Supp. 380, 388 (S.D.N.Y. 1973)

*Sim v. N.Y. Mailers Union No. 6*, 166 F 3d 465, 470 (2d. Cir. 1999)

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-512 (U.S. 2002)

*Thompson v. Wyandanch Club*, 70 Misc. 299, 127 NYS 195 (1911)

*W.O.R.C. Realty Corp. v. Carr*, 177 Misc. 2d 148, 152-153 (N.Y. Misc. 1998)

**STATUTES**

29 U.S.C. § 158(a)(2)

**LAW REVIEW ARTICLES**

*Union Affiliations and Collective Bargaining* 128 U. Pa. L.Rev. 430, 440-53 (1979)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO MOTION FOR PARTIAL DISMISSAL**

**Introduction:**

In their Complaint, Plaintiffs (Patricia Holloman, Lorna Samuels and Judy Sheridan-Gonzalez), members of the Defendant New York State Nurses Association ("NYNSA") allege that  they were unlawfully disciplined in retaliation for their opposition to NYSNA's plans to disaffiliate from its parent national union, the United American Nurses (UAN). NYSNA's unlawful discipline was part of an effort to suppress plaintiffs'-- and other NYSNA members' – exercise of their free speech rights and to stifle opposition to disaffiliation, which was a bitterly contested issue within the organization.  These actions form the basis of the first three Counts in Plaintiffs' Complaint, which arise under the Labor Management Reporting and Disclosure Act (LMRDA).

Count Four, brought within the supplemental jurisdiction of the Court, asserts that NYSNA breached its contract with its members -- i.e., its governing rules -- by disaffiliating from UAN.[1]  NYSNA governing rules explicitly precluded the Board of Directors from voting on matters affecting collective bargaining, such as disaffiliation from the national parent union.  The relationship with the parent union enhanced NYSNA's collective bargaining strength, and thus relates to one of the core purposes of NYSNA, improving the "economic and general welfare" of nurses. [See attached Exhibit A, excerpts of Bylaws, Article I, §3(f)].[2]  Moreover, the bylaws expressly mandate that NYSNA act, through its

---

[1]In order to narrow the issues presented by this case, and because the issue presented by Count V of the complaint had become 'moot',  by Stipulation dated April 11, 2008, Plaintiffs voluntarily dismissed  Count V pursuant to Rule 41(a).(See Docket No. 19).

[2]  The Court may consider the bylaws and rules on the motion to dismiss, although they were not attached to the complaint. *Boykin v. Keycorp*, 2008 U.S. App. LEXIS 6401 (2d Cir. 2008) (court may consider facts presented in complaint or in documents that, although not attached

Delegate Assembly, "to **strengthen the collective bargaining program**." [Bylaws, Article IX,§2(c), emphasis added].   Whether NYSNA did, in fact, breach this contract with its members by disaffiliating (and weakening the collective bargaining program) clearly states a claim and is not appropriate for dismissal under Fed. R. Civ.P. 12(b)(6).

## Statement of Facts

### A.  Background

NYSNA is a unique entity: it is <u>both</u> a not-for-profit corporation (professional association) for all registered nurses (including supervisors and managers), <u>and</u> a labor union which represents nurses in collective bargaining.  It is governed by a Board of Directors which includes union members, non-union members and former supervisors.  The Board of Directors is elected by all members of NYSNA, including supervisors and managers, and Board members can be supervisors or managers. [Complaint ¶12].  The fact that, as a union, NYSNA can be governed by persons who are not union members or who are the managers and supervisors having disciplinary authority over members, gives rise to the issues raised in this complaint.  Given this odd configuration, labor law imposes restrictions on certain actions of the Board of Directors. These statutory restrictions are codified in the governing rules of the organization, which plaintiffs contend were violated here.

In 1999, members of NYSNA and several other state nurses associations joined together and formed the United American Nurses, AFL-CIO (UAN) to act as their national unified voice in collective bargaining matters with their employers (hospitals, nursing homes, and the like.)  [Complaint ¶16].  The UAN is an autonomous national labor organization which is an affiliate of the AFL-CIO.  UAN provided financial, technical, educational, and

---

to the complaint, are integral to it. See *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006), aff'd, 552 U.S. --, 128 S. Ct. 1147, (2008).

logistical support for NYSNA's collective bargaining and organizing efforts.  It also protected

NYSNA from raids by rival unions, as a result of its affiliation with the AFL-CIO.

[Complaint ¶¶18, 19].

In 1999, before NYSNA agreed to affiliate with the UAN, its Delegate Assembly, an

internal body comprised exclusively of union members, debated, voted, and ultimately

recommended the affiliation to the NYSNA Board of Directors.  [Complaint, ¶17].

Subsequently, the NYSNA Board of Directors effectuated the affiliation with the UAN.

### B.  Insulation Doctrine

NYSNA has enacted rules to "insulate" its collective bargaining functions from its

associational functions as required by federal labor law developed by the National Labor

Relations Board.  [See Argument, Section V, *infra*].   These rules constitute an integral part of

the contract between NYSNA and its members.  They permeate the relationship between

NYNSA and its members with respect to one of the core purposes of the organization—

negotiating collective bargaining agreements with employers.  The "insulation doctrine"

operates to insure that collective bargaining related matters are addressed *exclusively* by union

collective bargaining representatives without management or supervisor involvement.

[Complaint ¶13].   Count Four asserts that NYSNA violated its own bylaws and rules, which

prohibited the Board of Directors from voting on matters which affect collective bargaining,

such as affiliation (or disaffiliation) from the parent organization devoted to collective

bargaining. [Complaint ¶¶93-97].

There are no membership limitations on the persons who can vote for or be elected

members of the NYSNA Board of Directors.  Thus, the Board can potentially include

managers, supervisors, and former supervisors.   In fact, six of the thirteen members of the

current Board were not union members at the time they were elected. [Complaint ¶22]. Two members of the NYSNA Board, including the president and president-elect, were managers in their previous employment. Because statutory supervisors and managers can vote for, and be elected to serve on, the NYSNA Board, it is not an "insulated body" for purposes of federal labor law [Complaint ¶23]; consequently, NYSNA enacted specific rules to comport with labor law requirements, such as Bylaws Article IX and Policy 2-6.

### C. Articles of Incorporation, Bylaws and Rules

Under the bylaws, one of NYSNA's core functions is to "promote and protect the economic and general welfare of nurses." [Exhibit A, Bylaws, Article I, §3(f)].[3] Under the bylaws, collective bargaining-related functions fall within the Economic and General Welfare Program, which, as a result of the insulation doctrine, is deemed to be under the exclusive purview of NYSNA's Delegate Assembly. [Bylaws Article IX, §2(a)]. The Delegate Assembly "is an organizational unit of members represented by the association for purposes of collective bargaining," and the bylaws mandate that it "shall operate under its own rules which shall be in conformity and compliance with the **bylaws and policies of the association**." [Article IX, §§1, 3, emphasis added]. These policies include Policy 2-6, described below, stating the rules on insulation.

The purposes of the Delegate Assembly include, *inter alia*, "assist[ing] local bargaining unit members and staff of the association **to strengthen the collective bargaining program.**" [*Id*. at §2, emphasis added]. The Delegate Assembly was established in 1988 as a result of the Second Circuit's consideration of NYSNA's insulation rules in *Highland Hosp.*

---

[3] See also, Exhibit B, excerpts from Articles of Incorporation, (certificate of amendment originating in 1950): "[P]urposes of the corporation…are to…promote and protect the health and welfare of nurses…."

*v. NLRB*, 861 F.2d 56 (2d Cir. 1988), to ensure that the collective bargaining program remained insulated from the Board of Directors. [Complaint at ¶14.] [4]  Likewise, the first iteration of the current Policy 2-6 was adopted in 1989 to implement the insulation doctrine. [See attached Exhibit C, Policy 2-6, at p. 1].

Policy 2-6, titled "Policy: Legal and Fiduciary Obligations," encompasses "statements of legal and fiduciary responsibility and the guidelines for insulation of the association's collective bargaining program."  [See Exhibit C].  Section II of the Policy provides in pertinent part that:

> As a multi-purpose professional organization, NYSNA is in part a labor organization.  That part of the affairs of the association that involves the collective bargaining activities requires strict adherence to principles set out by applicable labor laws and court decisions.  Among the most important of these principles is that the rank and file employees whom the association represents must have full and complete freedom to determine their own goals in collective bargaining.  Accordingly, **the board of directors cannot participate in or influence the conduct of the collective bargaining program – including (but not limited to) such matters as elections, grievances, arbitrations, or contract negotiations.**  [Emphasis added].

Similarly, Section II (c) mandates that:

> **The board must scrupulously avoid any discussion of collective bargaining matters**, including any that may be erroneously brought to its attention by members or others outside the association.  [Emphasis added].

### D.  Majority of Members Vote Against Disaffiliation

In 2007, some members of the NYSNA Board began expressing dissatisfaction with NYSNA's relationship with the UAN.  At a Board meeting on August 8, 2007, with only ten members of the thirteen member Board present, six members decided to poll the NYSNA membership concerning the question of continuing its affiliation  in the UAN or disaffiliating.  [Complaint ¶24].  Four members of the Board present at the meeting (including

---

[4] See Argument Section V *infra*.

two of the three plaintiffs, Holloman and Sheridan-Gonzales), and two other Board members, opposed the decision to take the poll and voted "no" on the question on August 8th.[5] [Complaint ¶26].

The poll concerning disaffiliation was conducted in late August and early September 2007. Plaintiffs, and approximately twenty other nurses, formed a group called "NYSNA Nurses for Unity" (hereafter "Nurses for Unity") and actively campaigned against disaffiliation from the UAN. The Nurses for Unity conducted a vigorous – and ultimately successful --campaign, sponsored a website, and issued flyers and mailing against disaffiliation. Several other NYSNA Board members and staff, including its CEO, campaigned strongly in favor of disaffiliation from the UAN. [Complaint ¶¶32-37].

The vote was 2,312 to 1,533 against disaffiliation, with 60% of the members polled voting against disaffiliation. Surprisingly, in spite of this 60% vote, the NYSNA leadership continued to plan to disaffiliate from the UAN and took steps to silence the dissent of plaintiffs. [¶37].

### E. Suppression of Plaintiff's Dissent and Disciplinary Reprisal

In September and October 2007, internal union complaints were filed in a coordinated manner by various persons against individual members who participated in the plaintiffs' group, Nurses for Unity. The identically worded complaints asserted that the individuals engaged in "conduct detrimental" to NYSNA by opposing disaffiliation from UAN and "misused" the name and logo of NYSNA in the name of their group (i.e., "NYSNA Nurses

---

[5] The plaintiffs later issued a "Minority Report" as permitted by the NYSNA Policies and Procedures, Section I of Board Policy 2-6, detailing the reasons for their opposition, on September 26, 2007. Among other reasons, they opposed the Board's decision on the poll because they believed it violated the insulation requirements in Policy 2-6.

for Unity.") [Complaint ¶39].  NYSNA officials encouraged or solicited at least some of the complaints, which all contained identical language.  [Id. ¶40].

The internal union complaints were scheduled to be investigated by a NYSNA committee.  However, on November 15, 2007, following a protest from the members improperly accused, including Plaintiffs, the NYSNA Board dismissed the complaints. NYSNA's Board conceded that the Nurses for Unity could not be disciplined because the wrongful actions alleged (alleged misuse of the NYSNA name and logo) were "protected under the freedom of speech provisions of applicable federal labor law."   Despite its dismissal of the internal charges, NYSNA expressed "outrage" over the behavior of the Nurses for Unity, thereby reprimanding its members, including Plaintiffs, for their opposition to disaffiliation.  NYSNA also sent a mailing to thousands of its members, explaining that although the complaints had been dismissed, the Board had conveyed its "outrage" to the Nurses for Unity.  [Complaint ¶¶43-44].

On November 30, 2007, NYSNA separately notified plaintiffs Sheridan-Gonzalez and Holloman, both former elected NYSNA Board members, and plaintiff Samuels, a current Board member, that formal action was being taken against them in their status as Board members. The basis for the action was that the three plaintiffs engaged in "public dissension by publicly opposing the Board" in connection with their "participation in the Nurses for Unity campaign against disaffiliation from UAN."[6]

The punishment imposed on plaintiffs was that each of them would "no longer be considered for appointment to any NYSNA board, committee, council, task force or award"

---

[6] The authority for the Board's action was the same NYSNA Policy 2-6, which it claimed required Board members to support majority decisions, "refrain from public dissension" and "avoid creating confusion and divisiveness among the members." [Complaint ¶45].

or "nomination for any ANA or ANA-entity related position." Plaintiff Samuels was additionally disqualified "as a sitting board member … from all executive session meetings." Ms. Samuels was a member of the finance committee, and the elected Secretary of the Board, but she was removed from the finance committee and was denied the opportunity to be appointed to any executive committee and councils.[7] The predicate for the discipline against plaintiffs was expressly based on their protected speech and was also in reprisal for their success in persuading 60% of the membership to vote against disaffiliation. [Complaint ¶¶46, 47, 49, 50].

### F.  The Board's Disaffiliation Decision

On December 17, 2007, the NYSNA Board of Directors surprisingly voted to disaffiliate from the UAN, despite the fact that a 60% majority of collective bargaining members voted against such action. [Complaint ¶¶53-55]. The action was taken without consulting with the Delegate Assembly, contrary to its own past practice from 1999. [Complaint ¶59]. The disaffiliation decision adversely affected NYSNA's collective bargaining program because UAN provided national technical, financial, educational and logistical support for collective bargaining activities, and offered its members the benefits of affiliation with the AFL-CIO. By disaffiliating from UAN, NYSNA's bargaining program was weakened, contrary to the mandate of Article IX. Non-union members on the Board voted on this important decision which affected only the union members, (while Samuels, a union member, was deliberately excluded from this vote.) [Complaint¶57].

---

[7] After this Complaint was filed, NYSNA reinstated Ms. Samuels to her positions on the Board and permitted her to resume attending Executive Sessions. Plaintiffs subsequently dismissed Count V of the Complaint. See fn 1, *supra*.

## ARGUMENT

### I.  Applicable Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court  must "accept all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008), *citing ATSI Communication, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).   "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-512 (U.S. 2002), quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz* at 514, quoting *Hishon v. King & Spalding*, 467 U.S. 69 (1984).

Under this liberal standard, Defendant's motion to dismiss Count IV of the Complaint must be denied as it is clear that Plaintiffs have stated a claim for breach of contract between NYSNA and its members based on the applicable  bylaws, rules and regulations of the organization.

### II.   NYSNA's Bylaws and Rules Form a Contract with its Members

Count IV of the Complaint is a claim for breach of contract which arises under the common law of New York. [Complaint ¶ 92].  Plaintiffs contend that the act of disaffiliation from UAN violated Article IX of the bylaws, which granted the Delegate Assembly exclusive jurisdiction over collective bargaining matters, and mandated that it act "to strengthen" –not weaken—the collective bargaining program.  More specifically, the Board violated Policy 2-

6, when it improperly discussed and affected the collective bargaining program. [Id. at ¶¶104-106].[8]

NYSNA's bylaws and rules, including Policy 2-6, create a contract between NYSNA and its members. Since at least 1879, New York has recognized that bylaws and regulations are "in the nature of a contract" between a corporation and its members. *Kent v. Quicksilver Mining Co.*, 78 N.Y. 159 (1879)(for-profit corporation); *Thompson v. Wyandanch Club*, 70 Misc. 299, 127 NYS 195 (1911)(nonprofit corporation).  This principle is so well-settled as to be beyond dispute, and applies equally to non-profit and for-profit corporations.  See, e.g., *Robinson v. Dahm*, 94 Misc. 729, 735 (N.Y. Misc. 1916) (constitution and by-laws of an association by which members have agreed to be bound constitute a contract between the members themselves and between the association and the individual members); *Edison Club v. Harvey*, 106 Misc. 2d 704, 705 (N.Y. Misc. 1981)("A member of a membership corporation is bound by the corporation's by-laws, and they become a part of his contract of membership");  *Garofano v. United States Trotting Association.*, 78 Misc. 2d 33, 37 (N.Y. Misc. 1974)("These by-laws and rules of the association, a nonprofit corporation, have a binding effect upon association conduct");  *W.O.R.C. Realty Corp. v. Carr*, 177 Misc. 2d 148, 152-153 (N.Y. Misc. 1998)("Any corporation may enact and enforce regulations in accordance with the powers granted it by its governing documents with which its shareholders/members must comply.")

---

[8] Contrary to the implicit suggestion of Defendant's arguments, Count IV does not arise under the New York BCL (or NPCL) but rather under the New York state common law governing formation and breach of contracts.  Only Count V, which has been voluntarily dismissed, pled such a claim of statutory violation. (See fn 1, supra.).

In *Anderson v. Bd. of Dirs. of the Powelton Club*, 183 Misc. 2d 200, 202 (N.Y. Misc. 1999), the court held that:

> The rights and obligations established by the duly authorized by-laws and rules of the Club may not be characterized as mere "technicalities" which may be disregarded…**The by-laws _and duly authorized and adopted rules_ for a not-for-profit corporation are part of the contract between parties. A person who joins a county club impliedly agrees that the club's charter, by-laws, _and rules_ shall be determinative of his/her rights and status in relation to the club and its members.** (Citations omitted)[Emphasis,underlining and italics added]..

The same principle applies with equal force to unions like NYSNA. *Brown v Sombrotto*, 523 F. Supp. 127, 133 (S.D.N.Y. 1981)(constitution and by-laws of a union, as an unincorporated association, express the terms of a binding contract between the union and its members, which define the privileges secured and the duties assumed by its members); *Ballas v. McKiernan*, 63 Misc. 2d 432, 434, 312 N.Y.S. 2d 204, 207 (1970)(same).   See also, *Caliendo v. McFarland*, 13 Misc. 2d 183, 188 (N.Y. Misc. 1958).

Thus, NYSNA's contention that Policy 2-6 is not a contract because it is "at most an expression of the Board's intent to adhere to certain guidelines in the future," [Mem. in Support of Motion at p. 3], contravenes decades of settled law [9] and has no merit.  Moreover, NYSNA's claim that a "mere" regulation or policy enacted by the Board lacks the weight or force of a bylaw, is also contrary to law.  The New York courts have long recognized that the term "bylaws" is used generically to include the constitution, bylaws, ***and rules and***

---

[9] NYSNA's attempt to analogize nonprofit corporation bylaws and rules to unilateral policy statements in an employment manual (Mem. at p. 4) necessarily fails.  Bylaws and rules are bilateral elements of a contract of membership, unlike the unilateral statements in an employment manual.

*regulations* of a corporation.  *Thompson, supra; Anderson,  supra*.  The bylaws and rules of a

nonprofit corporation are binding upon association conduct.  *Garofano,* 8 Misc. 2d at 37.

Furthermore, NYSNA wrongly claims that Policy 2-6 is "nothing more than a general

policy statement explaining the law concerning Board members' fiduciary obligations."  In

fact, Policy 2-6 is an absolutely necessary predicate to NYSNA's ability to function as a labor

union, given the requirements for a multi-purpose organization to be insulated under federal

labor law.  [See Section V, below].  If Policy 2-6 were not part of the association's rules, all

the labor contracts negotiated by NYSNA would potentially be subject to employer challenge.

Finally, in any event, even assuming *arguendo* that Policy 2-6 is not a contract in and

of itself, NYSNA cannot make the same claim about Article IX, §2(c) of the Bylaws. At the

minimum, NYSNA's contract with its members was breached when it effected the

disaffiliation, despite the vote of 60% of its members polled, an act which weakened its

collective bargaining strength and usurped the exclusive jurisdiction of the Delegate

Assembly.

### III.    NYSNA's Bylaws and Rule (Policy 2-6) Were Breached Because Disaffiliation Involved a Collective Bargaining Issue and Weakened the Union's Bargaining Program

Bylaws Article IX requires that collective bargaining matters are within the

exclusive purview of  the Delegate Assembly, which must act "to strengthen" the

collective bargaining program. [Article IX, §2].  Section II of Policy 2-6 explains the

fundamental necessity of the association's compliance with the insulation doctrine and

provides:

> Accordingly, **the board of directors cannot participate in or influence the conduct of the collective bargaining program – including (but not limited to) such matters as elections, grievances, arbitrations, or contract negotiations.**  [Emphasis added].

Section II (c) of NYSNA Policy 2-6 requires that:

> **The board must scrupulously avoid any discussion of collective bargaining matters**, including any that may be erroneously brought to its attention by members or others outside the association.  [Emphasis added].

The meaning of these provisions of the Bylaws and this rule must be determined in the context of NYSNA's status as a unique hybrid organization, part union, part professional association, and part non-profit corporation.  "Contract in labor law is a term the implications of which must be determined from the connection in which it appears." *J. I. Case Co. v. NLRB*, 321 U.S. 332, 334-335 (U.S. 1944).

In the case at bar, when the Board of Directors of NYSNA disaffiliated from UAN, they violated Article IX of the Bylaws and Policy 2-6.   Board members who voted for disaffiliation clearly "participated in or influenced the conduct of the [future] collective bargaining program."  Disaffiliation from UAN will result in the loss of the parent union's assistance, and, among other things, its protection from raids resulting from affiliation with the AFL-CIO.  The Board members could not have <u>avoided</u> "discussing a collective bargaining matter" when they improperly decided that NYSNA could perform collective bargaining functions better without the aid of the parent union, an action that will have the long term impact of weakening the union.

Courts routinely recognize that affiliation and disaffiliation decisions can affect the union's representational status in collective bargaining.  Indeed, the authority relied upon by defendant [Mem. At 9], *N.L.R.B. v. Fin. Inst. Employees  of Am. Local 1182*, 475 U.S. 192, 202 (1986) supports this proposition and validates Plaintiffs' contention that Policy 2-6 was

violated.[10]  See generally, *Union Affiliations and Collective Bargaining* 128 U. Pa. L.Rev. 430, 440-53 (1979).  Disaffiliation from a parent union raises the specter of employer challenges (valid or not) to the union's representative status.  See, e.g., *New York Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1074 (D.C. Cir. 2007)(employer raised challenge, among other issues, to union's representational status after its disaffiliation from the AFL-CIO); *Executive Bd. Local 1302  v. United Brotherhood of Carpenters & Joiners*, 477 F.2d 612, 614-615 (2d Cir. 1973)(upholding international's trusteeship of local attempting to disaffiliate where local's disaffiliation "would have a detrimental effect on the process of collective bargaining and would constitute a failure to carry out its duties to its members in a responsible manner." )

The disaffiliation decision here is all the more disturbing because it was made by a Board of whom **half** were not union members.[11]  The decision is finally inexplicable because it was so obviously unpopular with the majority of the members and the subject of such heated contention.  Clearly, by definition, the disaffiliation decision violated the insulation rules in Policy 2-6 and weakened the collective bargaining strength of the union in violation of Article IX.[12]

---

[10]  The Supreme Court noted that "As is the case with any organizational and structural change, a new affiliation may substantially change a certified union's relationship with the employees it represents.  These changed circumstances may in turn raise a 'question of representation' if it is unclear whether a majority of employees continue to support the reorganized union."  Id. at 202.

[11] Six of the thirteen Board members were not union members; two were former managers or supervisors.   Plaintiff Lorna Samuels, a union member, was not allowed to vote on the disaffiliation question,   Thus, six of the twelve Board members at the time of the vote were not union members.

[12]  The decision also violated Article IX in that the Board usurped the exclusive powers of the Delegate Assembly.

NYSNA next resorts to the claim that Policy 2-6 is merely a "management guideline" and that the Board was free to "interpret, change or amend its management policies" so long as NYSNA did not "act in contravention of its corporate purposes." [Mem. in Support at 5]. That argument is spurious. Policy 2-6 is essential to one of NYSNA's core purposes as a labor organization. [See Bylaws, Article I, §f.] NYSNA could not continue to function as a labor organization unless the insulation requirements were embedded in its bylaws and regulations. [See Section V, *infra*.]. In *Dennis v. Buffalo Fine Arts Acad.*, No. 07-2220, 836 N.Y.S. 2d 498 (table), 2007 WL 840996 (N.Y.Sup. Ct. 207), relied on by defendant, the procedural posture of the case is distinguishable,[13] but the court's analysis of the corporate issue is worth repeating: if the policy at issue amounted to "a departure or an ultra vires act in violation of its corporate purposes" it would be unlawful. Here, the <u>violation</u> of Policy 2-6 was an ultra vires act in contravention of NYSNA's "corporate purpose" as a union.

Finally, the Board here did not claim it was interpreting or amending Policy 2-6 in acting to disaffiliate; it simply <u>ignored</u> its existence. Notably, none of NYSNA's arguments address the violation of Article IX.

## IV.  The Business Judgment Rule Does Not Apply

NYSNA claims the disaffiliation decision is shielded from review because it falls within the "business judgment rule." But the rule requires corporate officers "to perform their duties 'in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances.' It provides a measure of protection to a

---

[13] In *Dennis*, the plaintiffs claimed that a decision to divest the nonprofit corporation of certain artwork violated management policies in violation of the N-CPL. Here, plaintiffs are not claiming the N-CPL is implicated in Count IV. Count V (which was a statutory claim) has been dismissed.

corporation's officers and directors when they act in the over-all best interests of all the shareholders." *Hellman v. Hellman*, 2008 NY Slip Op 28086, 17 (N.Y. Misc. 2008).

There are several exceptions to the business judgment rule. A court may review whether the Board's actions were authorized, taken in good faith, or were in furtherance of the legitimate interests of the corporation. *W.O.R.C. Realty Corp.,* 177 Misc. 2d at152. Courts may scrutinize corporate affairs where bylaws and prescribed procedures are violated, especially where those violations cause members to forfeit their rights. *Kendrick v. Watermill Beach Club, Inc.*, 8 Misc. 2d 798, 802 (N.Y. Misc. 1957). Likewise, judicial review is also available where the organization fails to administer its own rules fairly. *Matter of Marandino v. Westchester Country Club, Inc.*, 2006 NY Slip Op 7480, 1 (N.Y. App. Div. 2006).

Similarly in the union governance context, a triable issue of fact is raised where the issue involves the parties' compliance with the union's constitution and bylaws. *Maraia v. Valentine*, 21 A.D.3d 934, 935 (N.Y. App. Div. 2005); *Caliendo*, 13 Misc. 2d at 188. Contrary to NYSNA's argument, [Mem. at 7], the courts are not obliged to defer to the union's interpretation of its rules, where such deference yields an interpretation, as here, that would be patently unreasonable. *Sim v. N.Y. Mailers Union No. 6*, 166 F 3d 465 (2d Cir. 1999). An interpretation such as NYSNA's, that "conflicts with the 'stark and unambiguous' language of the [union] Constitution or reads out of the Constitution important provisions is a 'patently unreasonable interpretation' of a union Constitution." *Exec. Bd., Local 234 v. Transp. Workers Union of Am.*, 338 F.3d 166, 170 (3d Cir. 2003).

Here, plaintiffs allege that the Board members of NSNA did not perform their duties in good faith nor did they act in the overall best interests of the members when they blatantly

16

violated their own rule (Policy 2-6), a fiduciary standard established by the organization. Contrary to NYSNA's contention  [Mem. at 6], this fiduciary breach rises to the level of substantial wrongdoing, warranting judicial review. The Board violated a specific prohibition in its own rules, undermining a core purpose of the organization, thereby forfeiting the protection of the business judgment rule.  Moreover, contrary to Defendant's mischaracterization, the Complaint does allege that the Defendant acted in bad faith. See Complaint ¶¶ 73, 80, 90, 121 (alleging that NYSNA's conduct was "willful, intentional and in reckless disregard of plaintiffs' rights.")

Finally, NYSNA's argument [Mem. p. 9] that the decision was **both** purely a "corporate business decision" **and** "a matter of internal union governance" is unavailing.  It could not, by definition, have been both.  If the decision was a matter of internal union governance, then the Board violated Policy 2-6.  And if it was "purely a corporate business decision," the Board necessarily had to have weighed the pros and cons of the UAN affiliation, again violating Policy 2-6, unless it was acting irrationally or in bad faith, also a violation of the fiduciary standards of Policy 2-6.

### V.    Policy 2-6 Implemented the Insulation Policies Requisite to the Union Functions of NYSNA

In order for NYSNA to provide its members with collective bargaining representation, it was **required** to implement Policy 2-6 as a governing rule.  Indeed, it is ironic that this insulation rule was established in response to a series of cases in this Circuit in the 1980's involving NYSNA.[14]  In the first case, *NLRB v. North Shore University Hosp.*, 724

---

[14] The NLRB and courts require insulation because the influence of supervisors over an organization's functions in the area of collective bargaining is inconsistent with NLRA § (8)(a)(2).  NLRA § 8(a)(2) provides in pertinent part that "[i]t shall be an unfair labor practice

F.2d 269 (2d Cir. 1983), the court refused to enforce an NLRB decision certifying NYSNA as a bargaining representative, based on the concern that "various features of NYSNA's organizational structure . . . suggested imminent danger of supervisory influence on employee collective bargaining."[15]

The *North Shore* decision imposed the requirement that multi-purpose organizations ensure that their collective bargaining activities be insulated from the influence of supervisory members, officers, and officials wherever that influence might exist in the governing structure. 724 F.2d at 272. As a result of the *North Shore* decision, NYSNA "effectively changed its structure to allay the concerns expressed in [*North Shore*] and . . . insulated its collective bargaining activities from supervisor influence." *Highland Hosp. v. NLRB*, 861 F.2d 56, 57 (2d Cir. 1988). *Highland,* a case also involving NYSNA, cited with approval the fact that, although supervisors continued to sit on NYSNA's Board of Directors, "the Board was not involved in, nor could it interfere with, collective bargaining matters." 861 F. 2d at 59. To implement this new rule, the court approvingly recognized that NYSNA:

> **Enacted internal regulations to prevent supervisors from voting on collective bargaining agreements or becoming involved in collective bargaining activities**.

*Id*. at 59 [emphasis added].

Among other things, Bylaw Article IX *and* Policy 2-6 were two of the internal rules that NYSNA adopted to comply with the requirements of *North Shore* and *Highland*. In fact, the Delegate Assembly provisions became effective in 1988, and the first iteration of the current Policy 2-6 was adopted on January 26-27, 1989, less than three months after *Highland*

---

for an employer. . .to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it. . . ." 29 U.S.C. § 158(a)(2).

[15] *Highland Hosp. v. NLRB*, 861 F.2d 56, 57 (2d Cir. 1988).

was decided. [See Exhibit C at page 1]. The fact that the Second Circuit examined and approved NYSNA's internal rules only confirms that insulation is a fundamental core principle of the relationship between the members and the union.

NYSNA's contention [Mem. At 12] that there has been no violation of the insulation doctrine, based on the Second Circuit's approval of its rules in *Highland*, begs the question: the issue is NYSNA's **compliance** with the approved rules. For Defendant to now suggest that this fundamental Policy is less than an enforceable contractual requirement between it and its members is simply to ignore these labor law requirements.

NYSNA also contends that Policy 2-6 and the insulation doctrine were not "technically violated" because no supervisors were actually on the Board of Directors at the time of disaffiliation. [Mem. at 10-11]. But the express terms of Policy 2-6 required the Board members – regardless of supervisory status -- not to "discuss any collective bargaining matters" or "participate in or influence the conduct of the collective bargaining program" for the reasons enumerated in *North Shore* and *Highland,* to prevent even the possibility of supervisory taint on collective bargaining decisions.

NYSNA argues next that insulation requirements have never come into play here because the disaffiliation decision did not involve collective bargaining. This contention raises a factual question not ripe for disposition on a motion to dismiss, since UAN provided services to NYSNA in support of its collective bargaining program and its affiliation with the AFL-CIO provided NYSNA the valuable benefit of protection from raids by rival unions. These facts, which must be assumed to be true at this stage of the pleading, show that, in addition to Policy 2-6, NYSNA violated Article IX of the Bylaws by acting to weaken the collective bargaining program.

Clearly, Plaintiffs have stated a claim upon which relief can be granted in Count IV, and Defendant's motion should be denied.

## **CONCLUSION**

Based on the foregoing arguments and law, defendant's motion for dismissal of Count IV should be denied.

Respectfully submitted,

 /s/  Betty Grdina
Betty Grdina (D.C.BAR #450346)
*Admitted Pro Hac Vice*
HELLER, HURON, CHEROKEE, LERNER, SIMON & SALZMAN
1730 M Street N.W., Suite 412
Washington, D.C. 20036
202- 293-8090

Charles R. Both (D.C. Bar #42424)
*Admitted Pro Hac Vice*
1666 Connecticut Ave. N.W., Suite 500
Washington, D.C. 20009
202-833-9060

David B. Goldstein (DG 8291)
RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C.
111 Broadway, Suite 1102
New York, NY 10006-1901
212-254-1111 x 103

Attorneys for Plaintiffs

# BYLAWS

and
Extracts From
Articles of Incorporation



NEW YORK STATE NURSES ASSOCIATION

Bylaws as amended October 7, 2006
Articles as amended November 30, 1995



PLAINTIFF'S
EXHIBIT

A

## Extracts From Articles of Incorporation
### (as amended November 30, 1995)

1st.    The purposes...for which...the corporation shall now exist:

To further the efficient care of the sick and disabled and others requiring nursing service; to advance the educational and professional standards of nursing; to maintain the honor, character and dignity of the nursing profession; to promote the educational and professional advancement of nurses; to promote and protect the health and welfare of nurses; to promote cordial relations and cooperation among New York state nurses and between such nurses and nurses (individually or in association with one another) throughout the world; to publish and otherwise disseminate information concerning nursing and nurses; and to do all things necessary, proper, incidental, suitable, useful and conducive to the complete accomplishment of the foregoing purposes in their broadest sense.

2nd.    That the corporate name by which said Corporation hereby to be formed shall be known and distinguished is and shall be THE NEW YORK STATE NURSES ASSOCIATION.

3rd.    That the territory in which the operations of said Corporation are to be principally conducted in the State of New York.

4th.    That the principal office of said Corporation shall be located in the County of Albany and State of New York.

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Article I | Name, Object and Functions | 1 |
| Article II | Members, Dues, and Affiliates | 1 |
| Article III | Disciplinary Action | 2 |
| Article IV | Board of Directors | 2 |
| Article V | Officers and Directors | 4 |
| Article VI | Standing Committees | 5 |
| Article VII | Councils | 5 |
| Article VIII | Clinical and Functional Practice Units | 6 |
| Article IX | Delegate Assembly | 7 |
| Article X | Constituent District Nurses Association Assembly | 8 |
| Article XI | New York State Nurses Association Political Action Committee | 8 |
| Article XII | Nominations | 8 |
| Article XIII | Elections | 9 |
| Article XIV | Voting Body | 10 |
| Article XV | Membership Meetings | 10 |
| Article XVI | Quorum | 10 |
| Article XVII | Constituent District Nurses Associations | 11 |
| Article XVIII | Organizational Membership in American Nurses Association | 12 |
| Article XIX | Parliamentary Authority | 12 |
| Article XX | Association Communication | 12 |
| Article XXI | Amendments | 12 |

# BYLAWS

## ARTICLE I - NAME, OBJECT AND FUNCTIONS

### Section 1.
The name of this association shall be The New York State Nurses Association, hereinafter referred to as this association.

### Section 2.
The object of this association is to accomplish the purposes as stated in the Articles of Incorporation.

### Section 3.
Functions:
a) Promote nursing and health services of a nature commensurate with human needs;
b) Advocate for effective systems of nursing care delivery;
c) Identify and promote standards of nursing education, practice and services, and research;
d) Promote ethical standards in keeping with the American Nurses Association *Code for Nurses*;
e) Initiate and conduct legislative activities and provide for political action that will insure and protect the public's health;
f) Promote and protect the economic and general welfare of nurses;
g) Approve, conduct and promote continuing education in nursing;
h) Act and speak for nurses and nursing;
i) Represent nurses and nursing to the public, governmental and non-governmental groups;
j) Provide for communication with consumers concerning nursing and health care;
k) Promote recruitment for nursing careers.

## ARTICLE II - MEMBERS, DUES, AND AFFILIATES

### Section 1. Members and Dues
A. Members
   1) A member is one:
      a) who has been granted a license to practice as a registered nurse in at least one state, territory, possession or District of Columbia of the United States or is otherwise lawfully so entitled to practice and who does not have a license under suspension or revocation, and
      b) whose application for membership has been accepted in accordance with association policy, and
      c) who has paid the current dues and any other dues, fees, and financial obligations as required by current policy, and
      d) who has not been suspended or expelled by this association.
   2) A Direct Member is one:
      a) who meets the above requirements of a Member, and
      b) whose membership status is further defined in ANA bylaws and agreement between NYSNA and ANA.
B. Dues
   1) Annual dues for this association are established by the membership voting by secret ballot.
   2) The annual dues provide membership for twelve consecutive months.

3) Members who qualify for the following categories may pay reduced dues as established by the voting body:
   a) Nurses not represented for collective bargaining by this association;
   b) Nurses age 62 and older who are retired and earning not more than what social security allows;
   c) Unemployed nurses;
   d) Nurses who are totally and permanently disabled;
   e) Lifetime members.
4) Upon failure to pay current dues and any other dues, fees, and financial obligations as required by current policy, membership rights and privileges are forfeited.

## Section 2. Organizational Affiliates

a) Definition
   An organizational affiliate of NYSNA is an organization that:
   1) meets criteria established by the NYSNA board of directors;
   2) has been granted organizational affiliate status by the board of directors.
b) Qualifications
   Each organizational affiliate shall meet the criteria established by the NYSNA board of directors.
c) Responsibilities
   Each organizational affiliate shall:
   1) maintain a mission and purpose harmonious with the purposes and functions of NYSNA;
   2) pay an affiliation fee to NYSNA.
d) Rights
   Each organizational affiliate shall be entitled to:
   1) one representative in the NYSNA Voting Body who must be a registered nurse who shall be eligible to vote on all matters coming before the Voting Body except issues related to establishing dues and amendment of bylaws;
   2) make reports or presentations to the Voting Body within its area of expertise, including presentation of proposed actions;
   3) submit the names of qualified registered nurse members as nominees for appointment to serve in NYSNA appointed structural units.

# ARTICLE III - DISCIPLINARY ACTION

## Section 1.

Members shall be subject to reprimand, censure, fine, suspension or expulsion for violation of the American Nurses Association *Code for Nurses*, or for violation of these bylaws or for conduct detrimental or injurious to the association or its purposes, in accordance with established policy. Conduct considered detrimental or injurious to the association or its purposes shall include working behind a duly authorized picket line established by NYSNA in a primary dispute with an employer, provided the member is a member of a bargaining unit represented by the association.

## Section 2.

A member may apply for reinstatement in accordance with established policy.

## Section 3.

Disciplinary action taken by any state nurses association against its members shall be recognized by this association.

# ARTICLE IV - BOARD OF DIRECTORS

## Section 1.

The Board of Directors is the elected body responsible for the corporate management and fiduciary affairs of this association. It is authorized, by provisions of applicable law, to do all things

appropriate and necessary for the development and perpetuation of this association.

### Section 2.
The Board of Directors shall consist of the five officers and eight directors at large.

### Section 3. Functions
a) Transact the business of this association;
b) Establish major corporate policies;
c) Establish the association's fiscal year;
d) Adopt an annual budget;
e) Provide for an annual audit of all financial books by an independent CPA;
f) Provide for maintenance of association headquarters;
g) Appoint a chief executive officer and define the responsibilities;
h) Establish special committees as needed;
i) Appoint members of all committees and councils with the exception of the Nominating Committee;
j) Fill any vacancy on the Board of Directors except a vacancy occurring in the office of the president or president-elect;
k) Fill any vacancy on the Nominating Committee;
l) Determine the date, place and registration fee for the annual membership meeting;
m) Ratify action authorized by vote of the Board of Directors between meetings of the Board of Directors;
n) Provide for the establishment and dissolution of clinical and functional practice units;
o) Assume responsibility with regard to constituent district nurses associations as specified in these bylaws;
p) Submit to the New York State Education Department a list of qualified nominees for suggested appointment to the State Board for Nursing;
q) Grant exception to the provisions of these bylaws for projects relating to the membership year or the collection and payment of dues;
r) Recommend to the voting body persons to receive honorary recognition in accordance with established policy;
s) Provide for implementation of association policies and positions approved by the Voting Body
t) Report to the voting body at the annual meeting the current status of all resolutions passed by the voting body at the prior annual meeting.
u) Appoint trustees of the NYSNA-PAC, in accordance with the bylaws of the NYSNA-PAC.

### Section 4. Meetings
a) Regular meetings shall be held immediately preceding and immediately following each annual membership meeting and at such other times as shall be determined by the Board of Directors.
b) Special meetings may be called by the president on ten calendar days notice to each member of the Board of Directors either by written or verbal communications, and shall be called by the president in like manner and on like notice upon the written request of six or more members of the Board of Directors. Special meetings shall be held at such time and place as may be specified in the notice thereof.
c) In intervals between regular meetings, the president may refer and submit to the members of the Board of Directors definite questions relating to the affairs of the association which in the opinion of the president, require immediate action on the part of the Board of Directors. The result of such a referendum, which shall require a majority vote of the entire Board of Directors, shall control the action of this association and its Board of

Directors, officers, organizational units, committees, councils, agents and employees.

## Section 5. Executive Committee

There shall be an Executive Committee of the Board of Directors composed of the five officers of this association which shall have all the powers of the Board of Directors to transact business of an emergency nature between regular meetings.

## ARTICLE V - OFFICERS AND DIRECTORS

### Section 1.

a)  The five officers of this association shall be a president, president-elect, vice president, secretary and treasurer.
b)  There shall be eight directors at large.

### Section 2. Election

a)  The president-elect, treasurer and four directors at large shall be elected in the odd year.
b)  The vice president, secretary and four directors at large shall be elected in the even year.

### Section 3. Terms

a)  The president-elect shall serve in that office for a two year term and then shall become president for a two year term.
b)  The other officers and directors at large shall serve two year terms.
c)  No officer or director at large shall serve more than two consecutive terms in the same office nor a total of more than eight consecutive years.

### Section 4.

a)  Officers shall perform the duties usually performed by such officers, duties specified in these bylaws, and duties designated by the Board of Directors.
b)  Directors at large shall perform the duties specified in these bylaws and the duties designated by the Board of Directors.

### Section 5. Duties of the President

a)  Chair the Board of Directors, the Executive Committee and the Constituent District Nurses Association Assembly.
b)  Preside at all meetings of this association;
c)  Serve as an ex officio member of all committees except the Nominating Committee;
d)  Serve as the official representative of this association.

### Section 6. Duties of the President-elect

In the absence of the president, the president-elect shall assume the duties of the president as specified in Article V, Section 10(a).

### Section 7. Duties of the Vice President

In the absence of the president-elect, the vice president shall assume the duties as specified in Article V, Section 10(b).

### Section 8. Duties of the Secretary

a)  The secretary shall be responsible for all minutes, records and notifications.
b)  The chief executive officer shall assume such duties in connection with the work of the secretary as shall be designated by the Board of Directors.

### Section 9. Duties of the Treasurer

a)  The treasurer shall be responsible for the fiscal affairs of this association.

**Section 5.**

a) Each clinical and functional practice unit shall have an executive committee composed of a chairperson, vice chairperson and member at large. The chairperson and member at large shall be elected at the annual meeting in the even year to serve for a term of two years; the vice chairperson shall be elected at the annual meeting in the odd year to serve for a term of two years.

b) Each executive committee shall be responsible for the business of the unit.

## Section 6. Terms

No member of the executive committee of a clinical or functional practice unit shall serve more than two consecutive terms in the same office nor a total of more than eight consecutive years.

## Section 7. Vacancies

a) In the event of a vacancy occurring in the office of chairperson of a clinical practice unit or functional practice unit, the vice chairperson shall serve as chairperson for the remainder of the chairperson's term.

b) In the event of a vacancy occurring in the office of vice chairperson or member at large, the vacancy will be filled by appointment of the Board of Directors.

c) Absence from two consecutive regular meetings of an executive committee shall be cause for declaring a vacancy in the position. Such vacancy shall be declared by majority vote of the Board of Directors.

## Section 8.

Clinical or functional practice units may be dissolved by a two-thirds vote of the Board of Directors:

a) upon agreement by the Board of Directors and the respective unit that there is no reason for its continuance; or

b) upon failure of the unit to carry out its objective or to conform to the principles and requirements of this association.

# ARTICLE IX - DELEGATE ASSEMBLY

## Section 1. Definition

The Delegate Assembly is an organizational unit of members represented by the association for purposes of collective bargaining.

## Section 2. Purposes

The purposes of the Delegate Assembly are to:

a) Advance the mission of the association as it relates to the Economic and General Welfare Program.

b) Provide an opportunity for mutual assistance to local bargaining units.

c) Assist local bargaining unit members and staff of the association to strengthen the collective bargaining program.

## Section 3. Accountability

The Delegate Assembly shall operate under its own rules which shall be in conformity and compliance with the bylaws and policies of the association.



# The University of the State of New York

PLAINTIFF'S
EXHIBIT
B


STATE OF NEW YORK:
                    : SS.
COUNTY OF ALBANY :

      Pursuant to the provisions of Section 11, Article 2 of the Membership Corporations Law, consent is hereby given to the filing of the annexed certificate of incorporation of "THE NEW YORK STATE NURSES ASSOCIATION" as a membership corporation.

      This consent, however, shall in no way be construed as an approval by the Education Department, Board of Regents or Commissioner of Education of the purposes and objects of this corporation, nor shall it be construed as giving the officers or agents of this corporation the right to use the name of the University of the State of New York, Education Department, Board of Regents or Commissioner of Education in its publications and advertising matter, nor shall it be deemed to be a waiver of the approval of the Board of Regents for the conduct of a correspondence school by such corporation as provided in Section 5002 of the Education Law.

      IN WITNESS WHEREOF, I, James E. Allen, Jr., Acting Commissioner of Education of the State of New York, for and on behalf of the State Education Department, do hereunto set my hand and affix the seal of the State Education Department, at the City of Albany, this 27th day of November, 1950.

      Acting Commissioner of Education

5379-95-2

CERTIFICATE OF EXTENSION OF PURPOSES OF
THE NEW YORK STATE NURSES ASSOCIATION
PURSUANT TO SECTION THIRTY OF THE MEMBERSHIP CORPORATIONS LAW

The undersigned, Mabel Detmold, President, and Alice J. Pearsall, Secretary, of The New York State Nurses Association, a membership corporation duly organized and existing under the laws of the State of New York, for the purpose of extending the purposes of said corporation, pursuant to Section Thirty of the Membership Corporations Law, do hereby make and subscribe this Certificate of Extension of Purposes of The New York State Nurses Association and do certify:

1.   The name of the corporation is The New York State Nurses Association.

2.   The original Certificate of Incorporation was filed in the Office of the Secretary of State of the State of New York on April 7, 1902, and in the Office of the Clerk of New York County on April 11, 1902.

3.   The purposes for which the corporation was formed, as stated in said original Certificate of Incorporation, were:

"The advancement of the educational standard of nursing; the furtherance of the efficient care of the sick; the maintenance of the honor and character of the nursing profession; and the furtherance of cordial relations between the New York State nurses and the nurses of other states and countries.".

4.   The purposes of the corporation as thus stated were extended by a Certificate of Extension of Purposes, pursuant to Section Thirty of the Membership Corporations Law, dated October 27, 1933, filed in the Office of the Secretary of State of the State of New York on November 2, 1933,  and in the Office of the Clerk of Albany County on November 6, 1933.

5379-96-5

5. The purposes of the corporation, as thus extended, now are:

"The advancement of the educational standard of nursing; the furtherance of the efficient care of the sick; the maintenance of the honor and character of the nursing profession; and the furtherance of cordial relations between the New York State nurses and the nurses of other states and countries; and the conduct of all things necessary, proper, incidental, suitable, useful and conducive to the complete accomplishment of the foregoing purposes.",

the words in italics having been added by said Certificate of Extension of Purposes.

6. The purposes now proposed to be added or, by way of extension, amended are indicated in italics in the following statement of the purposes for which it is intended and proposed the corporation shall now exist:

"To further the efficient care of the sick and disabled and others requiring nursing service; to advance the educational and professional standards of nursing; to maintain the honor, character and dignity of the nursing profession; to promote the educational and professional advancement of nurses; to assist nurses who are ill, disabled, destitute or otherwise in need; to promote and protect the health and welfare of nurses; to promote cordial relations and cooperation among New York State nurses and between such nurses and nurses (individually or in association with one another) throughout the world; to publish and otherwise disseminate information concerning nursing and nurses; and to do all things necessary, proper, incidental, suitable, useful and conducive to the complete accomplishment of the foregoing purposes in their broadest sense.",

5327-95-6

the sequence of statement of said purposes having been rearranged

merely in the interest of orderly statement.

7. No purposes are proposed to be eliminated.

In Witness Whereof, we have made and subscribed this Certificate in duplicate

this Sixth day of December, 1949.

*Mabel Detmold*

Mabel Detmold, President,
The New York State Nurses Association

*Alice J. Pearsall*

Alice J. Pearsall, Secretary,
The New York State Nurses Association

State of New York :

: ss.

County of Albany :

On the 6th day of December, 1949, before me, a notary public in and for

the County and State aforesaid, personally appeared Mabel Detmold and Alice

J. Pearsall, to me personally known and known to me to be President and

Secretary, respectively, of The New York State Nurses Association and the

same persons whose names are subscribed to the foregoing instrument dated

December 6, 1949, who, being by me severally and duly sworn according to law,

did severally acknowledge to me that they made and subscribed said instrument.

In Witness Whereof, I have hereunto subscribed my name and affixed my offic-

ial seal at Albany, New York, the day and year in this certificate first

above written.

*Beatrice Clop*

Notary Public

5377-95-7

Policy 2-6

### *Policy: Legal & Fiduciary Obligations*

Adopted: January 26-27, 1989
Reviewed: January 20-21, 1994
Revised: January 20-21, 1999
January 14-15, 2004



PLAINTIFF'S
EXHIBIT
C

It shall be the policy of the board of directors to abide by the statements of legal and fiduciary responsibility and the guidelines for insulation of the association's collective bargaining program as contained in the following document.

### Responsibilities and Powers of the Board of Directors

I. Legal and Fiduciary Obligations under Not-For-Profit Corporation Law

<u>A board of directors has the statutory authority to manage the affairs of the association.</u> The exercise of the management functions of the board is vested only when duly convened as a board, rather than as individual members. This principle is explained in terms of the value of consultation, deliberation, and collective judgment of a full board.

<u>Directors are fiduciaries of the corporation; as such, the primary obligation and responsibility of the directors is to ensure the survival and prosperity of the association in perpetuity.</u> The standards by which the exercise of fiduciary responsibility is judged are:

a) that directors assure that the use of association resources is consistent with the purposes stated in the Articles of Incorporation

b) that decisions of the board are within the board's authority to make, are made in good faith, and are not influenced by anything other than the best interests of the association. Decisions are those that a "reasonably prudent" individual would make given like circumstances.

As fiduciaries of the association, board members do not represent any particular geographic or other constituency. The obligation is to fairly address the interests of ALL members and to balance disparate interests for the overall benefit of the association.

Another fiduciary requirement of directors is that of undivided loyalty. A director cannot serve competing interests and must use individual judgment in recognizing and avoiding potential conflicts of interest. Simultaneous service on more than one

organization's board of directors must be weighed carefully in light of a director's obligation to put aside any other concerns while serving on the NYSNA board. In the event a director feels that there may be a conflict of interest in any matter before the board, the director's obligation is full disclosure to the board of the possibly competing interest. If a conflict of interest is determined to be present, the director is obligated to abstain from participation in any matter relevant to the conflict of interest.

<u>Directors have an obligation to participate fully in the decisions of the board.</u> A fundamental responsibility of a director is to attend meetings of the board and to engage in all deliberations of the board.

With limited exceptions (e.g., when a potential or actual conflict of interest has been identified) a director has a duty to vote on matters before the board. A director should express fully any opposition he/she has to an action of the board before a vote is taken. Once a vote is taken, a director incurs an obligation to interpret and defend the majority decision, UNLESS:

a) you feel the action being taken is sufficient to endanger the association. Your obligation in this case is to inform the board of your feelings and to refrain from public dissension.

b) you choose to file a written minority report. This recourse should occur very infrequently, if at all, since your obligation is to avoid creating confusion and divisiveness among the members. Members have a right to expect cohesive, coordinated leadership.

<u>Directors have an obligation to preserve appropriate confidentiality of matters before the board.</u> Members of the association have the right to reasonably full disclosure of board proceedings. Meetings of the board are normally open to any member. Minutes of the board are also open to review by any member.

It is generally accepted and recommended practice that directors do not discuss transactions of the board until official notification to members has been made. A summary of board action is sent to the District Nurses Associations after each board meeting and is published in <u>Report</u>. The board determines the appropriate timetable for release of information on board transactions.

If the board determines that a matter is of a nature that requires further protection of confidentiality, or if the matter before the board could not be fully and productively discussed in an open board meeting, an Executive Session of the board may be called. The board must then determine when external notice of any board action is to be made. Minutes of Executive Sessions are maintained as confidential and are not open to member inspection.

<u>The actions of the board and those of previous boards are binding. A position of record may be changed, but it may not be ignored.</u>

II. Requirements of Labor Law

The association represents licensed professional nurses and other health care employees for purposes of collective bargaining; therefore, NYSNA is a registered labor organization under the National Labor Relations Act, the New York Public Employees' Fair Employment Act (the Taylor Law), the New York City Collective Bargaining Law, and other statutes. The association is the certified collective bargaining representative of nurses and other employees in both the public and private sectors of health care.

As a multi-purpose professional association, NYSNA is in part a labor organization. That part of the affairs of the association that involves the collective bargaining activities requires strict adherence to principles set out by applicable labor laws and court decisions. Among the most important of these principles is that the rank and file employees whom the association represents must have full and complete freedom to determine their own goals in collective bargaining. Accordingly, the board of directors cannot participate in or influence the conduct of the collective bargaining program -- including (but not limited to) such matters as elections, grievances, arbitrations, or contract negotiations.

The National Labor Relations Board has, in a 1985 decision, suggested that the association must be able to demonstrate to its satisfaction that the collective bargaining program is free of the potential or actual domination of statutory supervisors (persons who act in the interest of the employer). Since such persons may be elected to the board of directors, the nominating committee, or other positions of influence within the association, it is critical that board members strictly adhere to guidelines for the proper insulation of the collective bargaining program.

a) In all matters having to do with the Economic and General Welfare Program, the board must demonstrate an arms-length relationship.

b) There can be no disclosure to the board of the activities of the collective bargaining program except for those matters that are on public record.

c) The board must scrupulously avoid any discussion of collective bargaining matters, including any that may be erroneously brought to its attention by members or others outside the association.

d) The board delegates to the Executive Director full responsibility for the administration of the Economic and General Welfare Program. The board cannot be involved in the selection, terms and conditions of employment, or evaluation of staff other than the Executive Director.

e) No individual who is not a member of a collective bargaining unit (or eligible for such representation) may be appointed to any committee, task force, or other organizational unit which is involved with the Economic and General Welfare Program.

f) No member of the board who in his/her employment situation would be deemed to be a statutory supervisor can participate in any disciplinary procedure which involves a represented nurse.

III. Responsibility and Functions of the Board under Bylaws

Article IV of the NYSNA bylaws specifies the responsibility and functions of the board of directors.

Article V specifies the overall duties of the officers and directors.

Article III. Disciplinary Section is also a responsibility of the board. The procedure for conduct of disciplinary proceedings is contained in the board manual.

*Section 1-07 Guidelines Policies and Procedures re: Discipli...*

Adopted: October 25, 1982 (As "Guidelines, Policies and Procedures re: Conduct Detrimental or Injurious to the Association or its Purposes")

Reviewed: March 24-25, 1993
January 21-22, 1998

Revised: October 21, 1987
January 18, 2001
January 11, 2006

# See Attached

## THE NEW YORK STATE NURSES ASSOCIATION

## GUIDELINES, POLICIES AND PROCEDURES RE DISCIPLINARY ACTION

**Introduction**