IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------:
                                                        :
PATRICIA LEO HOLLOMAN,                                  :
LORNA SAMUELS, and JUDY                                 :
SHERIDAN-GONZALEZ,                                      :
                                                        :
                    Plaintiffs,                         :        08 CV 00211 (LAP)
                                                        :
          v.                                            :
                                                        :
NEW YORK STATE NURSES                                   :
ASSOCIATION,                                            :
                                                        :
                    Defendant.                          :
                                                        :
-------------------------------------------------------

**DEFENDANT'S MEMORANDUM OF LAW**

**IN FURTHER SUPPORT OF MOTION FOR PARTIAL DISMISSAL**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................iii

Argument ...............................................................................................................................1

Article IX of NYSNA's Bylaws does not Confer "Exclusive Jurisdiction"
over Collective Bargaining Matters to the Delegate Assembly.............................................1

Plaintiffs' Argument that the 1999 Affiliation Vote was within the
Purview of Policy 2-6 but the 2007 Disaffiliation Vote was not is Illogical........................2

There are No Supervisors on the NYSNA Board of Directors...............................................3

The Disaffiliation Decision Did Not Involve Collective Bargaining Matters.......................6

Policy 2-6 Does not Constitute a Contract............................................................................7

Decisions by the NYSNA Board of Directors are Entitled to
Deference Pursuant to the Business Judgment Rule.............................................................7

Conclusion ............................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

Brodsky v. Local 306
      1999 WL 102763, (S.D.N.Y.), aff'd, 205 F.3d 1321 (2d Cir. 2000) ...................................2


Desert Hospital v. N.L.R.B.
      91 F.3d 187 (D.C. Cir. 1996) ...........................................................................................5


Exec. Board Local 1302, United Bhd. of Carpenters and Joiners of Am. v. United Bhd.
of Carpenters and Joiners of Am.
      477 F.2d 612 (2d Cir. 1973)........................................................................................9, 10


Highland Hospital v. N.L.R.B.
      861 F.2d 56 (2d Cir. 1988)...............................................................................................4


N.L.R.B. v. North Shore University Hospital
      724 F.2d 269 (2d Cir. 1983)..........................................................................................3, 4


N.L.R.B. v. Quinnipiac College
      256 F.3d 68 (2d Cir. 2001)............................................................................................4, 5


New York Rehab. Care Mgmt. v. N.L.R.B.
      506 F.3d 107 (D.C. Cir. 2007) .........................................................................................9


Sim v. New York Mailers' Union No. 6,
      166 F.3d 465 (2d Cir. 1999)..............................................................................................2


Stern v. General Electric Co.
      924 F.2d 472 (2d Cir. 1991)..............................................................................................8

U.S. v. International Brotherhood of Teamsters
        12 F.3d 360 (2d Cir. 1993).................................................................................................6


White v. White Rose Food
        237 F.3d 174 (2d Cir. 2001)..........................................................................................2


**Administrative Decisions**

Hoyt, Brumm & Link, Inc.
        292 NLRB 1060 (1989) ..............................................................................................6, 7


Ojai Valley Community Hospital
        254 NLRB 1354 (1981) ..............................................................................................5, 6


Sierra Vista Hospital, Inc.,
        241 NLRB 631 (1979) .............................................................................................3, 4, 6


**Statutes**
National Labor Relations Act

        29 U.S.C. § 158(a)(2)..................................................................................................3

## ARGUMENT

Count IV of the Complaint alleges a state law breach of contract claim based on Defendant's purported failure to abide by Policy 2-6 of NYSNA's Policies and Procedures for its Board of Directors. In their opposing papers, Plaintiffs now assert that the contract that forms the basis for Count IV is not only Policy 2-6 but also Article IX of NYSNA's bylaws.

**Article IX of NYSNA's Bylaws does not Confer "Exclusive Jurisdiction" over Collective Bargaining Matters to the Delegate Assembly.**

The allegations in Count IV fail to state a claim that NYSNA violated any provision of its bylaws. Notwithstanding the fact that nowhere in the Complaint did Plaintiffs allege a violation of Article IX, or even mention Article IX, Plaintiffs' attempt to bolster Count IV by invoking Article IX fails.

Plaintiffs misrepresent Article IX.  Contrary to Plaintiffs' assertion, there is no language in Article IX giving the Delegate Assembly "exclusive jurisdiction over collective bargaining matters."  See Pl. Opp. Br. at 9, 14 n.12; Pl. Opp. Br. Ex A.[1]  The only references to "collective bargaining" in Article IX are that "[t]he Delegate Assembly is an organizational unit of members represented by the association for purposes of collective bargaining" (Section 1) and that one of "[t]he purposes of the Delegate Assembly [is] to…[a]ssist local bargaining unit members and staff of the association to strengthen the collective bargaining program" (Section 2(c)).

Article IX of the bylaws does not purport to limit the authority of the Board of Directors.  While a union's bylaws do constitute a contract between a union and its members, there is no colorable basis for construing Article IX to create such a limitation, particularly in view of the extraordinary deference due to a union's own

---

[1] References to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Partial Dismissal and accompanying exhibits are cited herein as "Pl. Opp. Br. at ___" and "Pl. Opp. Br. Ex. ___" Defendant's Memorandum of Law is cited to herein as "Def. Br. at ___."

interpretation of its constitution. Sim v. New York Mailers' Union No. 6, 166 F.3d 465,

469-70 (2d Cir. 1999) ("We will defer to the Union's interpretation of its governing

documents unless that interpretation is patently unreasonable"); see also White v. White

Rose Food, 237 F.3d 174, 182 n.10 (2d Cir. 2001); Brodsky v. Local 306, 1999 WL

102763, at *3 (S.D.N.Y.), aff'd, 205 F.3d 1321 (2d Cir. 2000).  Accordingly, Plaintiffs'

belated effort to amend the Complaint in their brief is meritless.

**Plaintiffs' Argument that the 1999 Affiliation Vote was within the
Purview of Policy 2-6 but the 2007 Disaffiliation Vote was not is Illogical.**

Plaintiffs fail to explain how it is possible that the NYSNA Board of Directors' 1999

affiliation vote was permissible under Policy 2-6 but its 2007 disaffiliation vote was not. See

Def. Br. at 12-13.  They condemn the Board's 2007 disaffiliation vote on the grounds that the

Board cannot be "involved in" collective bargaining matters, yet make no serious attempt to

distinguish the Board's 1999 and 2007 UAN-related votes except to say that the 2007 Board

should have first "consulted" the Delegate Assembly.  Pl. Opp. Br. at 18.

Plaintiffs acknowledge that in 1999 it was the Board – not the Delegate Assembly – that

"act[ed] to affiliate with the UAN" and "effectuated the affiliation with the UAN."  Compl. ¶¶17,

99.  Although Plaintiffs allege that in 1999 the Delegate Assembly "was convened, debated the

issue and subsequently took a vote (not a poll or informal survey) to recommend affiliation"

whereas in 2007 the Board involved the Delegate Assembly by way of "an informal, nonbinding

survey," the fact remains that it was the ultimate decision by the Board in both 1999 and 2007

that determined NYSNA's relationship with the UAN.  Compl. ¶¶59, 61.  Assuming *arguendo*

that Plaintiffs are correct when they state that "Board members who voted for disaffiliation

clearly 'participated in or influenced the conduct of the [future] collective bargaining program',"

(Pl. Opp. Br. at 13), the decision to <u>affiliate</u> with the UAN equally involved "participat[ion]" or "influence[ ]" by the Board in connection with the collective bargaining program.

If this Court finds the disaffiliation vote by the Board was ultra vires, then to the same extent, it must find that the affiliation vote was equally ultra vires, and the UAN affiliation was void *ab initio*.  As a result, Plaintiffs would not be entitled to the relief they seek, even if their flawed interpretation of Policy 2-6 were correct.

**There are No Supervisors on the NYSNA Board of Directors.**

The NLRB created the insulation doctrine in order to prevent employers from dominating labor organizations that represent their employees and/or interfering with a labor organization's affairs to the extent that the organization no longer exclusively serves the interests of the employees. <u>Sierra Vista Hospital, Inc.</u>, 241 N.L.R.B. 631 (1979).  Here, in essence, Plaintiffs attack NYSNA's status as a bargaining representative by alleging that non-collective bargaining personnel improperly exercised control and influence over the collective bargaining rights of NYSNA members in violation of Section 8(a)(2) of the National Labor Relations Act ("NLRA") when the NYSNA Board of Directors voted to disaffiliate from the UAN.[2]  Thus, the insulation doctrine must be closely examined to determine whether, as Plaintiffs allege, the vote to disaffiliate was made by "a non-insulated body." Compl. ¶105.  Such an analysis, however, requires the Court to intrude upon the jurisdiction of the National Labor Relations Board ("NLRB") to resolve questions concerning the representational status of employees' chosen bargaining representative arising from the application or interpretation of the NLRA.

The Second Circuit, in two separate cases, has examined whether NYSNA as a multipurpose organization was in compliance with Section 8(a)(2). <u>N.L.R.B. v. North Shore</u>

---

[2]Section 8(a)(2) provides that "[i]t shall be an unfair labor practice for an employer… (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it…"  29 U.S.C. §158(a)(2).

University Hosp., 724 F.2d 269 (2d Cir. 1983) ("North Shore"); Highland Hospital v. N.L.R.B.,

861 F.2d 56 (2d Cir. 1988) ("Highland Hospital").    In North Shore, the Second Circuit denied

enforcement of the NLRB's order directing the hospital to bargain with NYSNA due to the

appearance of active involvement by the hospital's supervisors in the collective bargaining

process. 724 F.2d at 275.  The Second Circuit remanded to the NLRB to determine the extent of

the supervisors' involvement and the appropriate remedy:[3]

> The degree to which the Act requires a restructuring of a professional
> organization such as SNA is for the Board in the first instance to decide.
> It must, however, look at all the circumstances, including the structure of
> the organization and the role of supervisors in its governance.  Where that
> role is of significance, the Board should determine the appropriate
> methods of insulating the collective bargaining component and of
> preventing supervisors from violating Section 8(a)(2) through activities
> within the organization.

Id. at 275-76.

In Highland Hospital, upon finding that NYSNA's policies adequately prevented

supervisors from being involved in collective bargaining, the Second Circuit found that the

hospital was unable to demonstrate a "danger of a conflict of interest interfering with the

collective bargaining process" that was "clear and present."  861 F.2d at 58, quoting Sierra Vista,

241 NLRB at 633.  Accordingly, in light of the Board's decision in Sierra Vista and the Second

Circuit's decisions in North Shore and Highland Hospital, the insulation doctrine, grounded in

Section 8(a)(2), is not violated absent actual supervisory influence in addition to a demonstrated

conflict of interest between supervisors and employees in the bargaining process.  No such

scenario is present in this case.

---

[3] See also N.L.R.B. v. Quinnipiac College, 256 F.3d 68, 81 (2d Cir. 2001) ("the Board, with its
expertise, is best equipped to assess whether there has been [supervisory] influence…").

The NYSNA Board's decision to disaffiliate from the UAN plainly did not involve the intrusion of any supervisory influence into collective bargaining matters because there were no supervisors sitting on the Board of Directors at the time the decision was made.  See Desert Hospital v. N.L.R.B., 91 F.3d 187, 190 (D.C. Cir. 1996) (insulation not violated where, *inter alia*, supervisors were eligible to serve on union's board of directors but none did during the relevant time period).[4]  Here, Plaintiffs have not alleged that any supervisors were members of the Board of Directors – let alone supervisors employed by any employer with whom NYSNA bargains - at the time of the disaffiliation vote.  See also N.L.R.B. v. Quinnipiac College, 256 F.3d at 80 ("active participation in the affairs of a labor organization by supervisors employed by the employer with whom the labor organization seeks to bargain can give rise to question about the labor organizations' ability to deal with the employer at arm's length.") (emphasis added). Plaintiffs have merely alleged that "[t]wo managers of the NYSNA Board…were managers in their previous employment."  Compl. ¶22.

Plaintiffs seek to radically extend the insulation doctrine to reach the actions of a labor organization's Board of Directors from discussing or voting on matters even tangentially affecting collective bargaining regardless of whether there are any supervisors on the Board.  See Pl. Opp. Br. at 13 ("Board members who voted for disaffiliation clearly "participated in or influenced the conduct of the [future] collective bargaining program."]   Yet, there is no authority under federal labor law prohibiting a Board of Directors from being involved in

_____

[4] See also Ojai Valley Community Hospital, 254 NLRB 1354, 1356 n.13 (1981) ("inasmuch as no supervisors employed by [the hospital] presently sit on [the union's] board…and since no supervisors of other employees presently do so, we find the possibility that they may do so in the future and exert some influence on the bargaining process to be entirely too remote and speculative, and, hence, lacking in merit").

5

collective bargaining absent supervisory influence, and tellingly, Plaintiffs do not cite to any

such authority.[5]

Since Plaintiffs have not alleged, nor could they, that there were any supervisors involved

in the Board of Directors' decision to disaffiliate from the UAN, and therefore, no conflict of

interest, Count IV must, as a matter of law, be dismissed.

**The Disaffiliation Decision Did Not Involve Collective Bargaining Matters.**

Virtually anything the Board of Directors does could potentially have some indirect

impact on collective bargaining -- a decision to hire an aggressive or conciliatory staff member

or attorney; a decision to fund the collective bargaining activities generously or stingily; a

decision to lobby for favorable legislation; a decision to boycott the products or services of a

struck employer; or a decision to increase or reduce dues.  A decision to have a relationship or

affiliation with UAN could, arguably, also have such an indirect impact.  But the Second Circuit

and the NLRB have recognized that organizational and infrastructure activities by a non-

insulated body do not violate Section 8(a)(2) of the NLRA.  In U.S. v. Int'l Bhd. of Teamsters,

the Second Circuit held that the presence of an employer representative on the Teamsters'

Independent Review Board  ("IRB") (including the power to hire and fire staff) did not violate

Section 8(a)(2) because the IRB's authority concerned the "infrastructure" of the union and not

collective bargaining. 12 F.3d at 367.  In Hoyt, Brumm & Link Inc., the NLRB made a similar

---

[5] Plaintiffs are offended by "[t]he fact that NYSNA, a union, can be governed by persons who are not union members or who are the managers and supervisors of its union members" (Compl. ¶12). There is no law, however, against non-members, managers or supervisors participating in the internal affairs of a union.  See, e.g., U.S. v. Int'l Bhd. of Teamsters, 12 F.3d at 360 (2d Cir. 1993) (no violation of 8(a)(2) by supervisor's presence on oversight panel for union addressing issues affecting union's infrastructure); Hoyt, Brumm & Link, Inc., 292 NLRB 1060 (1989) (no violation of Section 8(a)(2) where supervisor was involved in union's internal affairs); Ojai Valley Community Hospital, 254 NLRB at 1356 n.13 ("mere presence of supervisors…is virtually irrelevant to determining status under [the NLRA]), quoting Sierra Vista, 241 NLRB at 632.

finding with respect to a supervisor who was a delegate to the union's national convention and

served on the union's finance committee, holding that these activities concerned "internal affairs

that did not involve him in the union's collective bargaining relationship with the employer." 292

NLRB at 1060-1061.

A non-insulated body has every right to make the kind of structural decisions that a union

convention can make.  Hoyt, Brumm & Link, Inc., 292 NLRB at 1061.  A quintessential example

of such a decision is one to affiliate or disaffiliate with another organization.  The contention that

the affiliation and disaffiliation decisions were barred by the insulation doctrine and Policy 2-6 is

simply meritless.

### Policy 2-6 Does not Constitute a Contract.

While a union's bylaws constitute a contract under both New York and federal law,

Plaintiffs cite to no authority holding that a Board's internal policy constitutes a contract, let

alone a contract between a union as an institution and its members.  The cases cited by Plaintiffs

in support of their claim that Policy 2-6 is a contract between NYSNA and its members do not

involve internal Board policies.  Pl. Opp. Br. at 10.   Plaintiffs' cases involve club members who

violated clear and unambiguous provisions of the clubs' published bylaws and their rules

governing members' conduct.  Policy 2-6, on the other hand, is part of an internal Board policy

manual only distributed to members of NYSNA's Board during their terms of office. [6]

### Decisions by the NYSNA Board of Directors' are Entitled to Deference Pursuant to the Business Judgment Rule.

The NYSNA Board of Directors, consistent with its past practice and its authority as a

non-profit board of directors, made a decision to change its organizational ties by disaffiliating

---

[6] Ex. 1 ("This manual and its contents are the exclusive property of [NYSNA].  Board members are requested: (1) not to duplicate or distribute any portion of the manual; and (2) to return the manual to the Association upon completion of their term of office.")  Exhibit 1 is appended to this brief.

with the UAN.  The management of a non-profit organization falls squarely in the hands of its

board of directors and a board's decision is immune to judicial review absent a showing of fraud

or bad faith.  Yet, Plaintiffs did not include in Count IV any allegations of fraud or bad faith.

Plaintiffs appear to concede that they are not alleging fraud as a basis for allowing judicial

review, but assert that they have properly alleged bad faith with respect to Count IV by citing to

paragraphs contained in the other counts of the Complaint. Although allegations of bad faith do

not need to rise to the levels of specificity required for fraud under Fed. R. Civ. P. 9(b), such

allegations must, at a minimum, be included among the allegations setting forth the bases for that

particular claim.  Stern v. General Electric Co., 924 F.2d 472, 477 (2d Cir. 1991).

In Stern, the Second Circuit, relying on the business judgment rule, upheld the dismissal

of a claim on a motion to dismiss because the plaintiff failed to set forth concrete allegations of

bad faith in connection with that particular claim, though he made allegations of bad faith in

connection with other claims. 924 F.2d at 477.  Similarly, Plaintiffs urge this Court to

incorporate what they characterize as allegations of bad faith in Counts I, II and III -- in relation

to Plaintiffs' alleged discipline  -  into Count IV.[7]  Plaintiffs obviously chose to exclude this

allegation from Count IV when drafting the Complaint, yet, now, when faced with dismissal

under the business judgment rule, they seek to use these separate allegations to justify their

argument.  Stern is directly on point in rejecting this approach.  924 F.2d at 477.[8]

---

[7] Plaintiffs also cite to Compl.¶121 despite their voluntary dismissal of Count V.

[8] We recognize that a technical failure to allege "bad faith" could be cured by amending the
Complaint.  But because even a *de novo* review of Policy 2-6 would support the Board's right to
disaffiliate such an amendment would be futile even if this Court were to find that Policy 2-6
was an actionable contract.

   Moreover, even if this Court needed to rely on the business judgment rule to uphold the
Board's authority to make the affiliation and disaffiliation decisions, an amendment would "have
to do more than add the words 'bad faith' to the Complaint."  Stern, 934 F.2d at 478 n.8.  Rather,
Stern makes clear that if Plaintiffs were to be permitted to "amend the complaint to allege that
the Directors' actions were motivated by an improper purpose [they] must state what the purpose

Regardless of this facial deficiency in the Complaint, the allegation in Counts I, II, III

that "Defendant's conduct was willful, intentional and in reckless disregard of plaintiffs' rights"

when it "disciplined" them does not add up to an allegation that the NYSNA Board of Directors

somehow acted in "bad faith" when they made the decision to disaffiliate from the UAN.

NYSNA's relationship with the UAN was relatively short in light of NYSNA's nearly 106 year

existence.  NYSNA represented its members in collective bargaining long before the UAN was

even created, and managed to become the largest collective bargaining representative of

approximately 34,000 New York state nurses without any assistance from the UAN. See Compl

¶ 6.  Therefore, absent any allegation in the Complaint that there was some malicious purpose for

the Board's decision to disaffiliate that would rise to the level of bad faith, the Board's decision

is protected by the business judgment rule.

Nor do Plaintiffs identify any interpretation of Policy 2-6 that is "patently unreasonable."

The Board's decision to vote to disaffiliate from the UAN was reasonable, notwithstanding

Plaintiffs' interpretation of Policy 2-6, because the Board's vote to affiliate with the UAN in

1999 was never challenged, no supervisors were sitting members of the Board of Directors at the

time of the disaffiliation vote, and the vote did not intrude upon NYSNA's collective bargaining

functions, such as bargaining strategy, ratification of collective bargaining agreements or

enforcement of a collective bargaining agreement through the grievance-arbitration process.

The cases cited by Plaintiffs have no bearing on this issue.  In New York Rehab. Care

Mgmt. v. N.L.R.B., 506 F.3d 107 (D.C.Cir. 2007), the Court affirmed the NLRB's rejection of

the employer's argument in a motion for reconsideration that the union's representative status

was altered because of its disaffiliation from the AFL-CIO.  In Exec. Board Local 1302, United

---

was, and why it was improper, in terms clear enough to provide notice to [defendants] of the
nature of the claim and the grounds on which relief is sought." Id.

Bhd. of Carpenters and Joiners of Am. v. United Bhd. of Carpenters and Joiners of Am., 477

F.2d 612, 615 (2d Cir. 1973) ("Local 1302"), the Second Circuit upheld the decision of an

international union to impose a trusteeship over a local union to prevent one of its local unions

from disaffiliating from a trade council and noted "the limited role of the judiciary in reviewing

the imposition of trusteeships under [Section 302 of the LMRDA, 29 U.S.C. §462]." Local 1302

does not, as Plaintiffs suggest, establish that disaffiliation, as a matter of law, has a detrimental

effect on collective bargaining; rather, it upholds the well-established principle of judicial

deference to internal union decisions relating to the union's effectiveness as a bargaining

representative. Defendant urges this Court to adhere to this long-standing principle as well, and

reject Plaintiffs' attempt to usurp the Board's authority to make decisions related to NYSNA's

internal organizational affairs.


## CONCLUSION

For the foregoing reasons, Count IV of the Complaint should be dismissed.

Dated: New York, New York
       May 16, 2008

                                        Respectfully submitted,

                                        SPIVAK LIPTON LLP
                                        Attorneys for Defendant
                                        New York State Nurses Association
                                        1700 Broadway, Suite 2101
                                        New York, New York 10019
                                        (212) 765-2100

                                        By: /s/  Hope Pordy
                                             Franklin K. Moss (FM 9161)
                                             Hope Pordy (HP 6253)
                                             Nicole Cuda Pérez (NP 6663)

# NYSNA'S BOARD OF DIRECTORS

# POLICIES

# AND

# PROCEDURES

# MANUAL



This manual and its contents are the exclusive property

of the New York State Nurses Association.


<u>Board members are requested</u>:

1)  not to duplicate or distribute any portion of the manual;

and

2)  to return the manual to the Association upon completion
of their term of office.