IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------:
                                                     :
PATRICIA LEO HOLLOMAN, et al.,                       :
                                                     :
                     Plaintiffs,                     :        08 CV 00211 (LAP)
                                                     :        ECF
        v.                                           :
                                                     :
NEW YORK STATE NURSES                                :
ASSOCIATION,                                         :
                                                     :
                     Defendant.                      :
                                                     :
-----------------------------------------------------:
```

## **PLAINTIFFS' MOTION FOR LEAVE TO FILE PROPOSED SURREPLY**

Plaintiffs hereby respectfully request leave to file the attached proposed four-page surreply to Defendant's Memorandum of Law in Further Support of the Motion for Partial Dismissal filed on May 16, 2008 (Docket No. 23, "Reply Mem"). Defendant raised new contentions and introduced new evidence (Exhibit 1 to the Reply Mem) not previously raised, and mischaracterized some of Plaintiffs' arguments. In the interests of justice, Plaintiffs respectfully request leave to file their proposed surreply to address the new evidence and mischaracterizations raised by the Defendant and to otherwise correct the record and assist the Court in resolving the Motion to Dismiss on a fully informed basis. The proposed surreply is attached for the Court's convenience as Exhibit A, in the event this motion is granted.

As grounds for this motion, Exhibit 1 to Defendant's Reply Memorandum was not addressed in the original Motion for Partial Dismissal and thus was not a subject addressed in our Opposition. Because Defendant has raised a new issue for the first time in its Reply Memo, Plaintiffs should be permitted to file the attached short surreply which

responds to the new evidence and corrects the mischaracterizations. *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-227 (2d Cir. N.Y. 2000) (reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party); *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.,* 767 F.Supp 1220, 1235 (S.D.N.Y.1991), *rev'd on other grounds,* 967 F.2d 742 (2d Cir.1992)("Where new evidence is presented in a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion."); *Ben-Kotel v. Howard University*, 319 F.3d 532, 536 (D.C. Cir. 2003)(the district court "routinely" grants motions for leave to file a surreply when a party is "unable to contest matters presented to the court for the first time in the last scheduled pleading") (quoting *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001).

## CONCLUSION

Based on the foregoing, Plaintiffs request leave to file their proposed surreply. The proposed surreply is attached as Exhibit A for the Court's convenience, in the event this motion is granted.

Respectfully submitted,

 /s/  Betty Grdina
Betty Grdina (D.C.BAR #450346)
*Admitted Pro Hac Vice*
HELLER, HURON, CHEROKEE, LERNER, SIMON & SALZMAN

1730 M Street N.W., Suite 412
Washington, D.C. 20036
202- 293-8090

2

Charles R. Both (D.C. Bar #42424)
*Admitted Pro Hac Vice*
1666 Connecticut Ave. N.W., Suite 500
Washington, D.C. 20009
202-833-9060

David B. Goldstein (DG 8291)
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.
111 Broadway, Suite 1102
New York, NY 10006-1901
212-254-1111 x 103

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------:
                                                     :
PATRICIA LEO HOLLOMAN et al.,                        :
                                                     :
                       Plaintiffs,                   :        08 CV 00211 (LAP)
                                                     :        ECF
          v.                                         :
                                                     :
NEW YORK STATE NURSES                                :
ASSOCIATION,                                         :
                                                     :
                       Defendant.                    :
                                                     :        EXHIBIT A – TO MOTON FOR LEAVE
-----------------------------------------------------:
```

### PLAINTIFFS' PROPOSED SURREPLY IN OPPOSITION TO MOTION TO DIISMISS

Defendant's Memorandum of Law in Further Support of Motion for Partial Dismissal [Reply Mem.] raises new issues and mischaracterizes Plaintiffs' arguments in opposition.

### A.    The New Evidence in Defendant's Exhibit 1 Is Not Accurate And Is Directly Contradicted by NYSNA's Website

Defendant states (Reply Mem. p. 7) that Policy 2-6 is "part of an internal Board policy manual only distributed to members of NYSNA's Board during their terms of office."  In support of this new contention Defendant attaches Exhibit 1, which states in pertinent part that "Board members are requested…(2) to return the manual to the Association upon completion of their term of office."  Defendant's apparent point --  that Board policies are not binding contracts because they are "only" available to Board members --  is not correct, and is inconsistent with other NYSNA materials and NYSNA's website.

First, NYSNA Policy 1-23, states that "Board of Directors' policies **that contain provisions that directly affect members** will be posted on the Association's members-only website ("Member Services Online")."  [See Attachment A-1, emphasis added].  The "Members

1

Only" section of Defendant's website, https://members.nysna.org/apps/MemberSrvcs.nsf ,

contains a Site Map which indicates that "all board of director policies" can be viewed, along

with a list of "Board of Directors Policies and Procedures," including Policy 2-6, which can be

viewed online.  [See Attachment A].   Since Policy 2-6 is posted online, presumably it is a

provision that "directly affects members."  NYSNA concedes [Reply Mem., pp. 1, 7], that a

union's bylaws constitute a contract under New York and federal law.  The case law [see pp. 9-

12 of Plaintiffs' Opposition to Motion for Partial Dismissal] does not distinguish between bylaws

or policies of an association and its members: both are equally binding.  Consequently, Policy 2-

6 is a binding contractual provision and Plaintiffs' claim that it was breached is entitled to be

heard on the merits.

## B.     NYSNA Mischaracterize Plaintiffs' Argument About Insulation

Defendant also contends (Reply Mem at pp.3-6) that insulation requirements were not

violated because there were no supervisors on the Board.  But Plaintiffs have not contended that

NYSNA violated the law of insulation.  Rather, we argued that Policy 2-6 which was concededly

enacted by NYSNA to comply with federal labor law requirements concerning insulation, was

violated (not the law governing insulation).  NYSNA's point [Reply Mem at p.5] that Plaintiffs

are "seeking to radically extend the insulation doctrine" is a red herring..

## C.     NYSNA Mischaracterizes Plaintiffs' Argument Concerning Bylaws Article IX and Policy 2-6

NYSNA claims (Reply Mem. pp. 1-2) that Bylaws Article IX does not give the Delegate

Assembly "exclusive jurisdiction" over collective bargaining matters, and that its own current

interpretation of its Bylaws should be given deference.  In making its argument, NYSNA

mischaracterizes Plaintiffs' argument (pp. 12-15 at Plaintiffs' Opp. Mot. For Partial Dismissal)

and ignores that Policy 2-6 must be read *in conjunction with* Bylaws Article IX.  Worse, NYSNA

ignores (or misrepresents) its own prior interpretation of these issues.  At NYSNA's October 2,

2005 Annual Convention, a member attempted to present a motion on the convention floor

involving bargaining units.  The Chair ruled the motion out of order because it should have been

addressed to the Delegate Assembly since "it addressed economic and general welfare issues

protected by rules of insulation" and thus was not properly before the Convention [Attachment

A-2, Transcript of 2005 Annual Convention at p. 144-145.]  The Chair also ruled out of order

another member's question about affiliation agreements, because "**They are not appropriate**

**for any kind of decision making by either the Board or this body.  But they can be**

**informed after the decision is made.**" [Id. at Tr. Pp. 148-149, emphasis added].[1]

Consequently, NYSNA's current interpretation of its Bylaws is directly inconsistent with

the position it publicly espoused in the past, and is "patently unreasonable."

**D.  NYSNA Mischaracterized An Authority Relating to the Business Judgment Rule**

NYSNA relies on *Stern v. General Electric Co*., 924 F. 2d 472, 477 (2nd Cir.

1991)(reversing and remanding dismissal for failure to plead bad faith, with leave to replead).

*Stern* stands for exactly the opposite proposition than the one for which it was cited. (Reply Mem

at 7).  Moreover, because NYSNA is a labor union, and the decision involved here deals solely

with its union functions, the business judgment rule should not apply; instead the Court should

apply federal law concerning union governance, stated in *Sim v. New York Mailers' Union No. 6*,

166 F. 3d 465, 469-70 (2nd Cir. 1999)(court will defer to union's interpretation of its governing

documents unless it is patently unreasonable).

---

[1] The Chair's ruling that the Board can "be informed" after the Delegate Assembly made a
decision on a collective bargaining matter, explains the supposed "illogic" of Plaintiffs' point in
our Opposition to Motion for Partial Dismissal [Reply Mem. at pp. 2-3].  In 1999, the NYSNA
Board agreed to affiliate with UAN after the Delegate Assembly voted on and approved the
affiliation.  Here, the disaffiliation decision was made without any type of prior approval by the
Delegate Assembly.

<u>**CONCLUSION**</u>

Based on the foregoing, Defendant's Motion for Partial Dismissal should be denied.

Respectfully submitted,

  /s/  Betty Grdina
Betty Grdina (D.C.BAR #450346)
*Admitted Pro Hac Vice*
HELLER, HURON, CHEROKEE, LERNER, SIMON &
SALZMAN

1730 M Street N.W., Suite 412

Washington, D.C. 20036
202- 293-8090

Charles R. Both (D.C. Bar #42424)
*Admitted Pro Hac Vice*
1666 Connecticut Ave. N.W., Suite 500
Washington, D.C. 20009
202-833-9060

David B. Goldstein (DG 8291)
RABINOWITZ, BOUDIN, STANDARD, KRINSKY &
LIEBERMAN, P.C.
111 Broadway, Suite 1102
New York, NY 10006-1901
212-254-1111 x 103

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------:
                                        :

PATRICIA LEO HOLLOMAN et al.,   :
                                          :

              Plaintiffs,      :              08 CV 00211 (LAP)
                                          :              ECF

    v.                               :

NEW YORK STATE NURSES     :
ASSOCIATION,                       :

              Defendant.     :

-------------------------------------------------------:

**ORDER GRANTING LEAVE FOR PLAINTIFFS' TO FILE
SURREPLY IN OPPOSITION TO MOTION TO DIISMISS**

      On Plaintiffs' Motion for Leave to File Proposed Surreply in Opposition to Defendant's

Motion for Partial Dismissal, and for good cause shown, the motion is granted and Plaintiffs'

Surreply Brief , attached as Exhibit A to the Motion for Leave, is hereby ordered filed.

SO ORDERED:

                              _____
                              Hon. Loretta A. Preska
                              United States District Judge

Policy 1-23

### *Posting Board Policies on*
### *Association Members-Only Website*

Adopted: March 8-9, 2005
Revised:
Reviewed:

NYSNA Board of Directors' policies that contain provisions that directly affect members will be posted on the Association's members-only website ("Member Services Online"). The Executive Director or the Executive Director's designee is authorized by the Board to determine which policies will be posted.

:: Board Policies | :: Members only home | :: NYSNA Home

ver 4.02.070115



## Site map

**HOW TO GET AROUND THE MEMBER'S ONLY SITE**

<u>Home page</u> - *the latest information for updates, announcements and nursing news*

<u>Account information</u> - *review and change your account information, manage your clinical and functional practice units, view your <u>activities</u> and change your <u>password</u>*

<u>Documents and Forms</u> - *view contracts, newsletters, and documents related to governance (i.e.: NYSNA Bylaws), practice, and collective bargaining (if applicable)*

<u>Convention handouts</u> - *for a limited time after every convention, selected session handouts are made available to all members, even if you didn't attend the convention*

<u>Board policies</u> - *view all board of director policies*

<u>CE History</u> - *View your CE history for any CEU's earned through NYSNA; also, print a certificate for each CE course*

<u>Publications</u> - *View archived articles from <u>New York Nurse</u>, <u>Journal</u> and our previous publication, <u>Report</u>*

<u>Legislative action center</u> - *keep up to date on the latest legislative issues, and connect with your legislator using this service to write to your state legislator on issues of importance to nurses*

<u>Merchandise</u> - *online store with some of our specially branded NYSNA products*

<u>Member benefits</u> - *check here for the latest benefits for members from travel and shopping to finance insurance, you're sure to find something of interest here*

## Board Policies

**BOARD OF DIRECTORS POLICIES AND PROCEDURES**

Hover over entries for date information.

### 1. General Association Policies

- Policy 1-01: Services of Association Legal Counsel
- Policy 1-02: Charges for NYSNA Publications
- Policy 1-03: Member Selection of Multiple Clinical Practice and Functional Units [eliminated January 2004]
- Policy 1-04: Rental of Mailing Labels
- Policy 1-05: NYSNA Awards
- Policy 1-06: NYSNA Archives
- Policy 1-07(a): Recognition of Disciplinary Action of other ANA Constituent Member State Nurses Associations Against Their Individual Members
- Policy 1-07: Guidelines Policies and Procedures re: Disciplinary Action
- Policy 1-08: Seating of Non-Members at Voting Body Sessions
- Policy 1-09: Attendance and Participation of Elected and Appointed Members of Organization Units and the Board of Directors
- Policy 1-10: Consideration of Formation of a Practice Focus Group
- Policy 1-11: Co-Sponsorship of Educational Programs
- Policy 1-12: Advertising in Association Publications
- Policy 1-13: Use of Gender Neutral Language In Association Written and Other Communications
- Policy 1-14: Complimentary Membership for Retired Nurses
- Policy 1-15: Guidelines for Honoring Recipients of Awards Conferred by Other Organizations
- Policy 1-16: Dual SNA membership
- Policy 1-17: Membership of Impaired Nurses
- Policy 1-18: Criteria for participation of elected and appointed leaders at selected events
- Policy 1-19: Transfer of Membership
- Policy 1-20: Guidelines for review and evaluation of bylaws of constituent district nurses associations and nurses associations wishing to become constituent associations
- Policy 1-21: Copyright Policy
- Policy 1-22: Chief Executive Officer Evaluation
- Policy 1-23: Posting Board Policies on Association Members-Only Website
- Policy 1-24: Criteria for NYSNA Organizational Affiliate Status
- Policy 1-25: Conflicts of Interest Relating to Service on NYSNA Organizational Units

- Policy 1-26: Limits on Member Use of Money from Outside Labor Organizations
- Policy 1-27: Use of the NYSNA Name/Trademark

## 2. Board of Directors Operations

- Policy 2-01(a): Conflict of Interest Statement
- Policy 2-01: Conflicts of Interest
- Policy 2-02: Board Appointments to NYSNA Positions
- Policy 2-03: Actions of the Board of Directors Between Regularly Scheduled Meetings
- Policy 2-04: Approval of Documents Prepared by NYSNA Organizational Units
- Policy 2-05: NYSNA Board Liaison Activity
- Policy 2-06: Legal & Fiduciary Obligations
- Policy 2-07: Open Board Meetings
- Policy 2-08: Recording Individual Board Members' Votes on Substantive Motions in Open Sessions of Board Meetings
- Policy 2-09: Members' Review of Minutes of Open Board Meetings
- Policy 2-10: Board Appointment to Fill a Vacancy on the Board of Directors
- Policy 2-11: Role and function of board liaisons to committees and councils

## 3. NYSNA Nominations and Elections

- Policy 3-01: Nomination and Election Procedures
- Policy 3-02: Simultaneous Service in Elected and Appointed Positions*
- Policy 3-03: Guidelines for Campaign Conduct
- Policy 3-04: Advance Release of Election Results to Candidates for NYSNA Association-wide Positions
- Policy 3-05: The role of the NYSNA Nominating Committee in nominations for clinical practice and functional unit executive committee positions [eliminated March 2008]
- Policy 3-06: Determination of regional designation of Nominating Committee candidates/members
- Policy 3-07: Timetable for Release of Slate for NYSNA Association-Wide Election

## 4. NYSNA/ANA Relationships

- Policy 4-01a: Role of NYSNA in ANA Endorsements
- Policy 4-01: Role of NYSNA in ANA Nominations
- Policy 4-02a: Disclosure of Records of ANA Delegate Activities
- Policy 4-02b: Seating of alternates in place of delegates to ANA House of Delegates and Advance Release of Delegate Subsidy
- Policy 4-02: NYSNA Subsidy of Delegates to American Nurses' Association

- Policy 4-03: Role of NYSNA in ANA-PAC Endorsements
- Policy 4-04: Implementation of NYSNA Bylaws Article XVIII Section 3c) Representation in ANA House of Delegates

## 5. Reimbursement Policies

- Policy 5-01(a): Complimentary Convention Registration
- Policy 5-01: Convention Honoraria and Expense Reimbursement
- Policy 5-02a: Reimbursement of Expenses Incurred in Participation in Constituent District Nurses Association Assembly Meetings
- Policy 5-02: Reimbursement of Expenses Incurred in Participation in Association Activity
- Policy 5-03: Remuneration of NYSNA President
- Policy 5-04: Guidelines for Honoraria for Association Services
- Policy 5-05: Official Travel Reimbursement and Honoraria for Board of Directors
- Policy5-6: NYSNA Investment Policy

## Table of Contents

- Table of Contents

NYSNA home page :: Members only home page :: Site map

ver: 2.01.071126 T:110685--

| | /apps/MemCodeC | /apps/MemberSn | boardpolicies | 110685 | 0 |
|---|---|---|---|---|---|
| 10302 | | | | | |

New York State Nurses Association

Annual Convention

October 2, 2005

Atlantic City, New Jersey

EXHIBIT

A-2

New York State Nurses Association – 2005 Annual Meeting –                    Page 144

Yes, hello Madam President. My name is Kathy Weireter. I'm the Chairperson at Shore Memorial Hospital in New Jersey. I speak on behalf of the NYSNA represented registered nurses in New Jersey.

President Compas: What's the number of your motion?

Kathy Weireter: I have two. The first one is 10, I mean 0105.

President Compas: And the second one.

Kathy Weireter: 0106.

President Compas: Please proceed with motion 0106. Be it resolved, that NYSNA remains the sole and exclusive bargaining agent for the already established bargaining units in New Jersey. Those units are Shore Memorial and Greenville Hospital.

President Compas: The President rules that this motion is out of order because it addresses economic and general welfare issues protected by rules of insulation.

Kathy Weireter: All right, point of information.

Microphone number 1.

<u>New York State Nurses Association – 2005  Annual Meeting –</u>                    Page 145

President Compas:  Microphone number 1.


Kathy Weireter:  These two facilities have worked very long and hard to be part of NYSNA.  I need to find out point of information, how do we appeal this?  Where do we go from here?


Lola Fehr, Executive Director, and coming up onto the stage is legal counsel, Richard Silber. The content of this motion is appropriately presented at the Delegate Assembly.  The rules of insulation preclude us in this body of discussing issues related to the Economic and General Welfare Program particularly as it relates to local bargaining units.   I am going to ask Mr. Silber to explain the legal basis for that decision.


Kathy Weireter:  Thank you.


Richard Silber, Legal Counsel:   As has been indicated, the motion raises collective bargaining issues that under decisions of the National Labor Relations Board and the federal courts should not be brought before a body that does or could include non-bargaining unit employees such as statutory supervisors and managerial employees. This body, the voting body, can and usually does contain those employees.  Therefore, the federal courts have held that anything relating to the collective bargaining arm of a professional nurses association should be insulated from any possible influence by the non-bargaining unit employees.  Therefore, the courts have held that these types of issues should not be raised before a voting body like this.  And in fact, we tried a

New York State Nurses Association – 2005  Annual Meeting –                    Page 146

case 20 years ago involving Highland Hospital where the collective bargaining status of this

organization was affirmed by the federal courts and in the record in that case it's very clear that

these types of matters cannot and should not be brought before a body like this.


Kathy Weireter:  Thank you.


President Compas:  Microphone number 1.


Anne Bove, President of Delegate Assembly.  As a point of information, on Saturday, October 8,

we are going to be talking about the affiliations with regards to the New Jersey issue and we

have invited every nurse that can possibly come specifically from New Jersey who is represented

by collective bargaining to be there.  It will be at 120 Wall Street and all members of Delegate

Assembly are required to be there.  Thank you.


President Compas:  Microphone number 1.


I have a question.  My name is Sue Cassadone from St. John's Riverside in Yonkers. What is the

proper forum to address your other state union sisters if you have an issue that affects everyone?

See, I always thought voting body was a gathering where you could bring issues forward but

now I have a statement that I wanted to read and I was told that because of the insulation issue, it

probably wouldn't be appropriate here.  So how do you, even if we had an editorial page in

Report, somewhere where you can at least get the word out to people across the state what your

Executive Director Fehr:   Not in this voting body, no.  If there was a continuing education
session open only to members of collective bargaining units, it would also be an appropriate
venue, but not this body which has other people in attendance as well.


President Compas:   Microphone number 1.


Anne Bove:    As a point of information, the statewide avenue that has now been established is
the Congress which meets twice a year which is a meeting of all the local bargaining unit chairs
and all these issues can then come forward with regards to collective bargaining within that
framework.  We had our first labor day this year and seemingly it was quite successful and
hopefully will be better and improved next go-round which will be again in May.  So the
Congress is where these issues can be brought to the table with regards to statewide initiative by
the local bargaining unit chairs.  Thank you.


President Compas:   Microphone number 1.


Hi, Pat Kane, District 13.  I do have a question regarding what the member had asked.  The
member was talking about, I believe, affiliation agreements.  I have a question concerning that
being you were saying it wasn't for this body.  If we do have in collective bargaining affiliation
agreements with other unions, is there any time that the voting body or the Board of Directors
can make decisions on that after those agreements would be made?

Executive Director Fehr:  The Board of Directors and this body can be informed of those

decisions after they are made.  They are not appropriate if they are related to organizing

collective bargaining issues.  They are not appropriate for any kind of decision making by either

the board or this body.  But they can be informed after the decision is made.  They are not

informed during the negotiations.  The details of that are not made known, simply that the

affiliations have been made.  Once it is public, then that information is distributed.


Pat Kane:  And just as a follow up to that because I do have a little gray area, would a servicing

agreement be different than an affiliation agreement?  And could this body and its board be

involved if there's a servicing agreement?


Executive Director Fehr:  Okay, the servicing agreement, and thinking specifically of the New

Jersey one, was in fact approved by the Board of Directors, it is a general document, it does not

refer to a specific area of location, any specific grievance, it's not at all specific to the collective

bargaining process.  So the entire agreement was approved by the board, but it is a little different

than the affiliation agreements that we are discussing in various arenas in terms of actual

organizing activity.


Pat Kane:  So then that servicing agreement is for a limited time and when it comes up the board

rules on it again?